IOLA PORTLAND CEMENT COMPANY, Respondent, v. WILLIAM ULLMANN et al., Appellants.

Springfield Court of Appeals, November 6, 1911.

1. CONTRACTS: Written Contract Superseding Prior One. A written contract, complete and perfect in itself and· not ambiguous, will be held to supersede all prior negotiations, written or verbal, relating to the same subject-matter. So, defendants cannot recover on a counterclaim for damages based on the breach of a prior contract, after it has been superseded by a subsequent one.

2. PLEADING: Contracts: No Recovery on Contract Not Sued on. A party cannot sue on one contract and recover on another. A litigant must take his position and stand by it.

3. ———: ———: Inconsistent Position: Change of Theory. Where the defendants in the trial court counterclaimed for damages on account of a breach of a prior contract and claim that a subsequent contract, which purported to supersede the prior one, was void, they cannot, on appeal, maintain that they were entitled to recover damages for a breach of the second contract on the theory that it was valid.

4. CONTRACTS: Failing to Comply with Condition: Pleading: Waiver Must Be Pleaded. In an action against the purchaser for cement sold and delivered under a contract; the defendants in their answer set up a counterclaim for damages for failure to deliver all the cement called for by the contract, and alleged a compliance with the terms of the contract on their part. The contract provided: "Buyer agrees to give seller shipping instructions a reasonable time before shipments are to be made." In defending the counterclaim plaintiff alleged and proved that defendants had not complied with this provision. *Held*, that defendants could not recover on their counterclaim, having failed to give shipping orders. *Held*, further, that under the pleadings defendants could not recover on the theory that they had an excuse for not ordering the balance of the cement.

5. ———: ———: ———. When goods are sold to be delivered on the buyer's demand or at the buyer's option, a demand by the buyer is a condition precedent to their delivery by the seller and in an action for the breach of such contract the demand must be alleged and proved.

6. EVIDENCE: Contracts: Pleadings: Admission of Incompetent Evidence Will Not Enlarge Scope of Pleadings. Under a plea of performance of a contract, evidence tending to show a waiver of performance is not admissible and though appellant may have been permitted to introduce such evidence, the admission thereof cannot enlarge the scope of the pleadings.

Appeal from Greene Circuit Court—*Hon. Alfred Page,*
Judge.

AFFIRMED.

*Mann, Johnson & Todd* for appellants.

(1) The provision contained in the contract that the cement contracted for was to be used in the erection of the courthouse at Springfield, Missouri, was known by the parties to said contract at the time of the execution thereof to be impossible for performance and was void. Beech on Contracts, sec. 22, p. 276; Lawson on Contract, secs. 101, 419; Bishop on Contracts, sec. 579; Nordyke v. Kehlor, 155 Mo. 643; Buchanan v. Layne, 95 Mo. App. 148. (2) Where the seller, as in this case, by his own act puts it out of his power

or flatly refuses to comply with his agreement, the purchaser need not show tender or offer to perform on his part. Chapman v. Railroad, 146 Mo. 481; Fitzgerald v. Hayward, 50 Mo. 516; Mfg. Co. v. Iron Works Co., 29 Mo. App. 526; Estumpf v. Mueller, 17 Mo. App. 283; Cousins v. Hann, 100 Mo. App. 452; Fairbanks, Morse & Co. v. Mining & Mfg. Co., 105 Mo. App. 644.

*W. L. White* for respondent.

(1) A written contract, complete and perfect in itself, and not ambiguous, will be held to supersede all prior negotiations, written or verbal, relating to the same subject matter, and parol testimony is not admissible to show that such was not the intention of the parties. Howard v. Scott, 98 Mo. App. 514; Bignall Co. v. Pierce, 59 Mo. App. 677; Bank v. Cushman, 66 Mo. App. 105; Boggs v. Laundry Co., 171 Mo. 291. (2) And where the subsequent contract includes and goes beyond the first, the first is superseded and no action can be maintained thereon. Mumford v. Wilson, 15 Mo. 562; Kelm v. Railroad, 98 Mo. App. 424. (3) A party cannot sue on one contract and recover on another. The trial court held against the defendants on the issue of the validity of the second contract, and therefore defendants should not be permitted to recover damages at all. Koons v. Car Co., 203 Mo. 254; Cole v. Armour; 154 Mo. 350; Smith v. Shell, 82 Mo. 220; Clements v. Yeats, 69 Mo. 625. (4) Where goods sold are to be delivered on the buyer's demand or at the buyer's option, a demand by the buyer is a condition precedent to delivery by the seller, and must be made before the seller can be liable for failure to deliver. 9 Cyc. 637; 35 Cyc. 182; Tiedeman on Sales, sec. 98; Moran v. Car Co., 210 Mo. 715; Maddox v. Wagner, 36 S. E. 609; Smith v. Watson, 55 N. W. (Iowa) 72; Holt v. Brown, 19 N. W. 236. (5) A party suing for breach of contract must allege and prove performance

of all conditions precedent, or he must allege and prove an excuse for their non-performance. He cannot rely on a waiver under a plea of performance. Roy v. Boteler, 40 Mo. App. 226; Brinkerhoff v. Elliott, 43 Mo. App. 194; Kansas City ex rel. v. Walsh, 88 Mo. App. 271; Lanitz v. King, 93 Mo. 513; Mohney v. Reed, 40 Mo. App. 109.

STATEMENT.—This action was commenced in the Greene County Circuit Court by the Iola Portland Cement Company, a corporation, against the defendants, William Ullmann and Lee Ullmann, to recover the purchase price of 550 barrels of Iola cement furnished in cloth bags. Trial was had before the court sitting as a jury and judgment rendered for the plaintiff from which the defendants have appealed.

The petition is as follows (caption omitted):

"Plaintiff says that it is and was at the several dates herein mentioned a corporation organized and operating under the laws of the State of Kansas, and duly authorized to do business in the business of manufacturing and selling cement to be used for building and construction purposes, known as Iola Portland Cement.

"That defendants are and were at said times partners doing business under the firm name of Ullmann Brothers in the city of Springfield, Greene county, Missouri, and engaged in the business of buying and selling cement, lumber and other materials used for building and construction purposes.

"Plaintiff further says that during the month of December, 1909, it sold and delivered to the defendants at the instance and request of defendants 550 barrels of Iola Portland Cement, as shown by the itemized statement of account hereto attached and marked 'Exhibit A'; that the reasonable value of said cement was ninety-eight cents per barrel, plus forty cents per barrel for cloth packages in which the cement was

shipped, said charge of forty cents per barrel to be refunded upon the return to the plaintiff of said cloth packages; that all credits due defendants for cloth packages returned and for freight paid by the defendants have been duly allowed and substracted from the total amount charged on said Exhibit A.

"That the amount now due and owing by the defendants to plaintiff is as shown by Exhibit A, $440; that neither the defendants nor any one for them have paid the same or any part thereof; that said amount has been due and payable since the first day of February, 1910, and as an open account draws interest at the rate of six per cent. per annum from said date.

"Wherefore, by reason of the promises, plaintiff says defendants are justly indebted to it in the sum of $440, with interest at the rate of six per cent. per annum from February 1, 1910, for which it asks judgment with its costs."

The defendants filed the following answer and counterclaim (caption omitted):

"Come now the defendants in the above entitled cause, and for answer to plaintiff's petition herein, and by way of counterclaim, state that on and prior to the 18th day of August, 1909, the plaintiff contracted to and with the defendants to sell and deliver to them 4000 barrels of cement, to be delivered in Springfield, Missouri, as directed by the defendants, at the net price of ninety-eight cents per barrel; that in pursuance of said contract, plaintiff delivered to defendnts 1740 barrels of cement.

"Defendants further state that said plaintiff failed and refused to ship the remainder of said 4000 barrels of cement so purchased, to-wit, 2260 barrels, although requested so to do by the defendants; that the defendants at all times complied with all the conditions of the contract between the said plaintiff and defendants, but that plaintiff in violation of the terms of its con-

tract as aforesaid and refused to deliver 2260 barrels of cement.

"Defendants further state that after the dates of their several contracts with plaintiff as aforesaid, the market price of cement increased, and that by reason of plaintiff's failure to deliver said 2260 barrels of cement as aforesaid defendants suffered a loss and were damaged in the sum of $679.30.

"Defendants further state that they have paid plaintiff the purchase price for the 1740 barrels so delivered by plaintiff, except the sum of $241.60, which said sum of $241.60 would be due the plaintiff for the cement so delivered had it complied with the terms of its contract.

"Wherefore, by reason of the premises, defendants pray judgment against the plaintiff in the sum of $437, the balance due defendants, and for costs."

Thereafter, the plaintiff filed the following reply (caption omitted):

"Comes now the plaintiff and for its reply to the answer and counterclim of the defendants herein denies each and every allegation in said answer contained.

"And further replying to said counterclaim, plaintitiff says that on or about the 10th day of August, 1909, it entered into a written contract with the defendants, by the terms of which contract the plaintiff was to sell and deliver to the defendants 3000 barrels of cement at the agreed price of ninety-eight cents per barrel for the cement and forty cents per barrel for the cloth sacks in which the cement was to be shipped, said forty cents per barrel to be refunded when the sacks were returned to plaintiff, the amount so refunded to be subject to a count and inspection of said sacks upon their arrival at plaintiff's factory. That on or about the 17th day of August, 1909, said contract was by agreement of plaintiff and defendants modified in

writing so that the amount of cement to be delivered was to be 4000 barrels.

"That by the terms of said written contract it was agreed that said cement was to be used in the erection of the courthouse at Springfield, Missouri, and defendants expressly agreed not to use the same for any other purpose or to re-sell or loan any of said cement. That plaintiff was not required to furnish more than 2000 barrels of cement in any calendar month, and all of said cement was to be delivered before December 31, 1909. That by the terms of said contract defendants agreed to give plaintiff shipping instructions a reasonable time before said cement was to be shipped, and the plaintiff was not to be required to ship any cement except on receipt of such instructions.

"Plaintiff further says that the defendants, in violation of their contract, did not use said cement in the construction of the courthouse, but used the same for other purposes; that defendants did not require or demand any cement for said purpose and could not have used it for said purpose, and therefore defendants suffered no loss or damage for any failure of plaintiff to deliver cement to the terms of said contract.

"Plaintiff further says that the defendants, in violation of their said contract, did not give plaintiff shipping instructions a reasonable time before December 31, 1909, or at any time before said date, for all the cement which they had agreed to buy in said contract, but that defendants gave plaintiff instructions to ship only 1740 barrels, all of which plaintiff shipped and delivered to the defendants. Wherefore, plaintiff says its failure to ship the balance of the cement mentioned in said contract, to-wit, 2260 barrels, was caused by the act of the defendants in failing to give said shipping instructions, and that such failure on the part of the plaintiff is therefore excused, and plaintiff is not liable

for any loss or damage which defendants may have suffered thereby.

"Wherefore plaintiff prays judgment on defendants' counterclaim."

The defendants filed the following answer to the plaintiff's reply (caption omitted):

"Come now the defendants, and for answer to the reply of the plaintiff filed herein, deny each and every allegation therein contained.

"And for further reply defendants state that on the 12th day of July, 1909, they purchased of plaintiff 1000 barrels of cement, to be delivered to them at Springfield, Missouri, at such times as the same was ordered by said defendants. That afterwards, to-wit, on the 13th day of June, 1909, defendants notified said plaintiff that they had sold and disposed of the 1000 barrels theretofore purchased and requested said plaintiff to increase said contract of the date of July 12th aforesaid, so that said contract of purchase would provide for 3000 instead of 1000 barrels, as aforesaid; that said plaintiff accepted said order of 2000 barrels additional cement and added the said 2000 barrels to the order and sale made on said 12th day of July; that afterwards, on the ―――― day of August, 1909, defendants ordered of said plaintiff an additional 1000 barrels of cement to be added to the contract of July 12th, as aforesaid, and that said order for said additional 1000 barrels was accepted by pliantiff and by plaintiff added to said contract of July 12th. That the contract price for all of said cement was ninety-eight cents per barrel, delivered at Springfield, Missouri.

"That after the aforesaid transactions were had between said parties plaintiff forwarded defendants a printed or written contract dated July 12, 1909, and purporting to cover the sale of 4000 barrels of cement, at the price of ninety-eight cents per barrel, which said contract specified that said cement was to be used in the construction of a courthouse in Springfield, Mis-

souri, and further providing that defendants should not have the right to loan or sell or dispose of any of said cement except for the purpose of the construction of said courthouse as aforesaid, and said contract further specified that all of said cement should be delivered prior to the 31st day of December, 1909. That said contract, although dated July 12, 1909, was in fact executed on the —————— day of August, 1909.

"Defendants further state that at all the times herein mentioned plaintiff knew that the cement sold by it to the defendants was to be used by them for the general trade in the city of Springfield by being sold to contractors doing contract work and to other parties desiring the same, and gave its consent thereto, and knew that said cement, or any part thereof, was not to be used in the construction or erection of a courthouse in the city of Springfield, Missouri; that on the —————— day of August, 1909, the date of the execution of said contract referred to in plaintiff's reply, it knew that the cement theretofore sold defendants, part of which had then been delivered, had been sold by defendants and had not been used for or on account of said courthouse, and that knowing said fact and with full knowledge of all the facts herein stated, plaintiff continued to deliver to defendants cement after the date of the execution thereof, and that by reason of the premises plaintiff is estopped from enforcing the provisions thereof, and has waived its rights thereunder, if any it had.

"Defendants state that it was well known to the parties to said contract referred to and set forth in plaintiff's said reply, at the time of the execution thereof, that the terms thereof were impossible of performance, for the reason that said courthouse was not under construction at said time, and that the authorities have the erection thereof in charge were not purchasing cement on account thereof, and that by reason thereof said contract was and is void.

"Defendants further state that said contract was and is void, for the reason that at the time same was executed it was not the intention of the parties, plaintiff and defendants, that the terms thereof should change or vary the terms and conditions of the original contract between said parties, or be binding upon either of the parties thereto.

"That said plaintiff well knew that the cement delivered to defendants before the execution of said contract had been used by them for purposes other than the construction of the courthouse, and well knew that the cement delivered subsequent to the signing of said contract was not to be used for such purpose by defendants, but that all the cement purchased as aforesaid by defendant was to be used in the general trade of said city, and that by reason of the premises plaintiff is estopped from claiming any rights under said contract mentioned in said reply.

"Defendants further state that said contract referred to in said reply was, and is, void and of no effect because it was in aid of contracts and agreements then existing between said plaintiff and other dealers in cement to regulate the price of said commodity, in violation of the statutes of the State of Missouri prohibiting unlawful combinations, pools and trusts.

"Defendants further state that said contract referred to in plaintiff's reply as of date of August 10, 1909, was not supported by a consideration, and was, and is, void.

"Wherefore, defendants pray judgment against plaintiff on their counterclaim in the sum of $437."

The court made a special finding of facts of which the following is the material portion in this connection:

"The court further finds from the evidence that all the cement ordered by defendants from plaintiff was shipped except 350 barrels; that the 350 barrels were ordered in two carload lots to be shipped respectively September 25th and October 5th; that defend-

ants urged shipment of these two cars of cement until December 7th; that in the meantime winter had set in; that street work and building operations had been virtually stopped because of the cold weather and that the sale of cement had been thereby almost entirely stopped; that if said cars of cement had been promptly shipped by plaintiff as ordered by defendants then defendants could have sold same in their trade and that therefore defendants are entitled on their counterclaim to the difference between the contract price, ninety-eight cents a barrel, and the market price at the time, to-wit, $1.25 per barrel, on the said 350 barrels of cement. The court therefore finds for plaintiff on their cause of action for the sum of $243.20 and interest at six per cent. from February 1, 1910, and finds for defendants on their counterclaim in the sum of $94.50."

The plaintiff was at the time of the transaction in controversy a manufacturer of Portland Cement, and defendants were partners dealing in cement and other building materials. On July 12, 1909, a salesman of the plaintiff called on defendants and sold them 1000 barrels of cement at $1.05 per barrel. This order was immediately shipped and settled for. Immediately after this, negotiations took place between the parties for the purchase and sale of other quantities of cement, and there were one or two verbal conversations between defendants and agents of the plaintiff in regard thereto, and in the letters and conversations different provisions of the contract were agreed upon, one by one, and one or more orders made by defendants and accepted by plaintiff. This correspondence covered a period of two or three weeks, and during that time the cement contracted for and which plaintiff agreed to furnish defendants amounted to 3000 barrels and the price was changed from $1.05 to ninety-eight cents per barrel. Other provisions were also discussed in the letters and conversations

not material to the merits of this controversy. After the details had been agreed upon, plaintiff sent to defendants two copies of a formal contract covering the sales, and asked them to sign it. This contract contained all the provisions that had been previously agreed upon, and some others, relating to the courthouse, and it was also made to cover orders already made, and the terms of payment, etc., some of which had not been mentioned in the previous negotiations. Defendant William Ullmann signed this contract for his firm without objecting to any of its provisions, and its execution was finally completed by delivery of one copy to each party on August 11th, nearly a month after the first negotiations were begun. It was dated back to July 12th, and it was mutually understood by the parties to cover the same transaction and the same cement as ordered on July 12th and 13th and all transactions between the parties not already executed.

This contract is as follows:

"KANSAS CITY, Mo., U. S. A.

"SPECIFIC CONTRACT No. 1656.

"The Iola Portland Cement Company, hereinafter called the Seller, sells and agrees to furnish and deliver, and Ullmann Brothers, hereinafter called the buyer, purchases and agrees to receive and pay for Iola Portland Cement in the quantity and on the terms and conditions herein expressed.

"Quantity: 3000 barrels of Iola Portland Cement. The purchase covers the entire quantity of Portland Cement required by the buyer on the following described work: To be used in the erection of the courthouse at Springfield, Mo.

"Time of Delivery: Prior to December 31, 1909. Seller will not be required to deliver more than 2000 barrels in any one calendar month.

"Price: Per standard barrel, in carload lots, $0.98—f. o. b. Springfield, Mo.

"The price is on the bulk cement; packages will be charged for in addition thereto as follows: Cloth sacks ten cents each, or forty cents per barrel; paper bags ten cents per barrel. Buyer agrees to pay for packages on the same terms as for cement. When cement is shipped in cloth sacks it is agreed that the sacks may be returned, subject to seller's count and inspection, and for all received in good condition at seller's factory, with all carrying charges prepaid by the buyer, credit will be allowed for the full amount paid for such sacks.

"A standard barrel of Portland Cement is four sacks of ninety-five pounds each, or three hundred and eighty pounds including weight of packages.

"Time of payment: Thirty days net on approved credit; and one cent per barrel discount will be allowed for payment in full including packages within ten days from date of invoice.

"If, during the life of this contract, the financial responsibility of the buyer becomes impaired or unsatisfactory to the seller, it reserves the right to require the buyer to make payments in advance, or to give satisfactory security or guarantee that invoices will be promptly paid when due.

"Transportation: Seller reserves the right to control routing of all shipments made under this contract. *Buyer agrees to give seller shipping instructions a reasonable time before shipments are to be made.* Seller shall not be responsible for delays caused by strikes, lockouts, fires, accidents, car shortages, transportation delays, or other causes beyond its control.

"Loss and Damage: Seller shall not be held responsible for shortage or damage to cement or packages occurring in transit. Railroad company's bill of lading shall be conclusive as to quantity, also as to cement and packages being in good condition when loaded in car at seller's factory.

"Specifications: Iola Portland Cement is guaranteed to meet the requirements of the United States Government or the standard specifications adopted by the American Society for Testing Materials. Seller will not be responsible for the improper use of cement, therefore will not guarantee finished work.

"It is understood and agreed that the cement sold and to be delivered under this contract will be used in the work herein described. The buyer shall have no right to resell or to loan the same or to assign this contract. If buyer sells or otherwise disposes to others any portion of said cement, the seller, may at its option, terminate this contract, buyer remaining liable for all unpaid accounts.

"Executed by the parties hereto this 12th day of July, 1909."

"THE IOLA PORTLAND CEMENT COMPANY,
"By E. R. Stapleton,
"General Sales Agent."

"ULLMANN BROTHERS,
"By William Ullmann."

The contract provides for the sale of 3000 barrels of cement by plaintiff to defendants at the price of ninety-eight cents per barrel. It provides that delivery shall be made before December 31, 1909, *the buyer agreeing to give shipping instructions a reasonable time before shipments were to be made*, and that not more than 2000 barrels shall be delivered in any one calendar month. It also provides that the cloth sacks in which the cement was to be shipped should be paid for at ten cents per sack, such charge to be refunded on return of the sacks. It allows the buyer thirty days in which to pay and contains a warranty of the quality of the cement.

Defendants wrote several letters to plaintiff after September 20th complaining about the delay in filling their orders, and urging an immediate shipment, to which plaintiff replied that owing to car shortage,

shortage of help, etc., they were unable to deliver at once, but promised to fill defendants' orders as soon as possible. On and after July 13th and prior to December 31, 1909, the date for the expiration of the shipment of the cement under the terms of the contract, the defendants ordered and plaintiff shipped to them under their contract 1740 barrels of cement. On September 25, 1909, the defendants ordered 150 barrels and on October 5th following ordered 200 barrels, making a total of 350 barrels ordered but not shipped, the order for the same being canceled prior to December 31, 1909. The trial court, however, allowed defendants' counterclaim for the profit they would have realized on the 350 barrels of cement. At no time did defendants order any cement except as just stated, and plaintiff never refused to ship, or gave an intimation that a delivery could not or would not be made. No notice was given plaintiff that defendants wanted or could have used more cement than they had ordered until after January 1, 1910, when the contract had expired, and then defendants demanded shipment of the balance of the 4000 barrels.

Defendants paid for all the cement shipped except the sum of $243.20, and plaintiff sued for the balance due. Defendants admitted the balance but set up the counterclaim, alleging damages because of the failure of plaintiff to ship the remaining 2260 barrels. Plaintiff's reply sets out the terms of the contract, and alleges that defendants had not performed their part of the contract; that they had violated their agreement to use the cement only in the courthouse, and had failed to give shipping orders, and denied any liability for any damages suffered by the defendants. Defendants thereupon filed a rejoinder in which they attacked the validity of the contract executed August 11th, on every possible ground, denying that it was of any force or effect whatever. At the trial, defendants introduced in evidence, as the contract between

the parties, a sale memorandum made at the time of the salesman's first call on July 12th, and several letters dated July 12th to July 24th, containing one or more orders for cement. All these writings precede the contract executed August 11th, and are merely preliminary negotiations leading up to it. This view was adopted by the trial court. Defendants did not introduce the contract as it was finally executed, and, when plaintiff offered it in evidence, objected on the ground that it was void. Throughout the trial, defendants relied on the preliminary orders and letters as constituting the contract, and denied the validity of the second or final contract, and in the motion for a new trial defendants except to the ruling of the court in holding that the contract executed August 11th was valid and the real contract. Defendants' claim for damages rested on the theory that the second or final contract was void. The court by its judgment held that the written contract executed August 11th was valid and the real contract, but nevertheless allowed defendants to recover damages for failure to get the two cars of cement ordered September 25th and October 5th, which orders defendants canceled on December 7th.

## OPINION.

NIXON, P. J.—I.    The contract dated July 12th, but in fact executed and delivered August 11th, is complete and unambiguous on its face. It was executed subsequent to the memoranda and orders on which appellants rely as constituting the contract. Therefore, it superseded and merged into itself all the prior negotiations and became the sole and final authoritative expression of the intention of the parties. The defendants could not recover on their counterclaim, based on a breach of the prior negotiations; they are not entitled to damages for a breach of the

prior contract after it has been superseded by a subsequent one. A written contract, complete and perfect in itself, and not ambiguous, will be held to supersede all prior negotiations, written or verbal, relating to the same subject-matter. [Howard v. Scott, 98 Mo. App. l. c. 514, 72 S. W. 709; Bignall & K. M. Co. v. Mfg. Co., 59 Mo. App. 673, 677, 678; Bethany Savings Bank v. Cushman, 66 Mo. App. 102, 105; Boggs v. Pacific Steam Laundry Co., 171 Mo. 282, 291, 70 S. W. 818.] And where the subsequent contract includes and goes beyond the first, the first is superseded and no action can be maintained thereon. [Munford v. Wilson, 15 Mo. 540, 562.] Upon respondent's making proof of the subsequent contract, the ground under appellants' counterclaim fell away and left it no support in the pleadings.

II. Since appellants have based their case on a contract which has been superseded by a subsequent one, they must recover on the later contract or not at all. They cannot ask the appellate court for a reversal of this judgment on the ground that they should have been permitted to recover more than they did on a contract the validity of which they disputed at every turn in the court below. The position of the defendants at the trial was that the second contract was void. Their position now is the exact opposite. They make no complaint here because the trial court held the second contract valid. Their sole contention is that their recovery under the second contract should have been greater. They present an entirely different case here from the case they presented in the trial court. They relied on one contract below, and they rely on another contract here. That this is not permissible is too well settled for argument. A party cannot sue on one contract and recover on another. The trial court properly held against the defendants on the issue of the validity of the second contract, and

therefore defendants should not be permitted to recover damages at all. A litigant will not be permitted to play fast and loose with his antagonist, nor to blow hot and cold. He must take his position and stand by it. [Koons v. St. Louis Car Co., 203 Mo. 227, 254, 101 S. W. 49; Cole v. Armour, 154 Mo. 333, 350, 55 S. W. 476; Smith v. Shell, 82 Mo. 215, 219, 220; Clements v. Yeates, 69 Mo. 623, 625.]

III.   According to the contract under which the cement was to be shipped, a demand by the buyer was a condition precedent to delivery by the seller. The evidence showed that cement is perishable, and must be used soon after its manufacture, and that a dealer cannot keep large quantities of it in stock for any length of time as it deteriorates very rapidly. The dealer must therefore order it as he wants it. It was consequently necessary to have it delivered only on the buyer's order. The seller could not safely ship any cement unless he knew the buyer was ready to use it. To meet this condition of things, the contract provided: "Buyer agrees to give seller shipping instructions a reasonable time before shipments are to be made." The parties by the use of this language could have had but one intention and purpose and that was that until demand was made there should be no delivery. By the nature of the case, as well as by the terms of the contract, a demand by the buyer was clearly a condition precedent to delivery by the seller, and before the buyer can hold the seller liable for failure to deliver, he must show that he has demanded shipment of the cement. It was as much the duty of the defendants to give shipping instructions as it was the duty of the plaintiff to ship.

Before there can be a breach of a contract, there must be a present duty to perform the conditions required by the contract. There could be no duty on the part of the plaintiff to deliver except on receipt

of instructions from the buyer because it was so provided in the contract. All such instructions given by defendants were in fact honored by shipment except as to the 350 barrels which plaintiff delayed in shipping until defendants countermanded the order, and defendants were allowed damages for plaintiff's failure to make this shipment. When goods sold are to be delivered on the buyer's demand or at the buyer's option, a demand by the buyer is a condition precedent to delivery by the seller; a demand is then necessary to render the contract absolute, and in an action for the breach of such a contract, the demand must be alleged and proven. [Maddox v. Wagner (Ga.) 36 S. E. 609; Smith v. Watson (Iowa), 55 N. W. 68, 72; Holt v. Brown, 19 N. W. 235, 236.]

IV. Another respect in which appellants' position here is inconsistent with their position below is that they now seek to show that they were excused from giving shipping instructions by the delay of plaintiff in filling their prior orders. The answer contains the following allegations in this connection: "Defendants further state that said plaintiff failed and refused to ship the remainder of the said 4000 barrels of cement so purchased, to-wit, 2260 barrels, although requested so to do by the defendants; that the defendants at all times complied with all the conditions of the contract between the said plaintiff and defendants, but that plaintiff, in violation of the terms of its said contract as aforesaid failed and refused to deliver said 2260 barrels of cement."

This is a plea of performance of all the conditions precedent, and as under their contract the giving of shipping orders was a condition precedent, this allegation was a positive allegation that shipping orders were given for the whole amount of cement covered by the contract; and, having alleged it, they had no right of action on their counterclaim except by proof of performance. In this court appellants seek to ex-

plain why shipping orders were not given for the entire amount of cement contracted for. Under a plea of performance, evidence tending to show a waiver of performance is not admissible. And although appellants were permitted to introduce evidence tending to show an excuse for not ordering more cement, the admission of such evidence cannot enlarge the scope of their pleadings. The answer alleges performance and they are bound by that allegation. A party's pleading is the only door through which he can introduce his evidence. A party suing for breach of a contract must allege and prove performance of all conditions precedent, or he must allege and prove an excuse for their nonperformance. He cannot rely on a waiver under a plea of performance. [Roy v. Boteler, 40 Mo. App. 213, 226; Brinkerhoff v. Elliott, 43 Mo. App. 185, 194; Kansas City ex rel. v. Walsh, 88 Mo. App. 271, 277, 278; Lanitz v. King, 93 Mo. 513, 6 S. W. 263; Mohney v. Reed, 40 Mo. App. 109.]

This action was carefully tried by the learned judge of the trial court; it is conceded that the finding of facts is supported by the evidence, the law was properly applied to the facts developed in the case and was as favorable to the appellants as they were entitled to. The judgment being for the right party is accordingly affirmed. All concur.