# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2128

_____

Samvel G. Topchian

*Plaintiff - Appellant*

v.

JPMorgan Chase Bank, N.A.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 12, 2014
Filed: July 28, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Samvel G. Topchian appeals from the district court's dismissal of his amended complaint against JPMorgan Chase Bank (Chase). Because we hold that Topchian has stated a claim for breach of contract, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

We recount the facts as described in the amended complaint and in the permanent loan modification agreement (the Agreement) that Topchian attached to his petition. See In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) ("[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect."); see also Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."). The amended complaint fails to set forth facts detailing the origins of Topchian's relationship with Chase. Presumably, Topchian entered into a loan agreement with Chase for a mortgage and subsequently encountered financial difficulties that prevented him from making the full payments under the loan agreement. As a result, Topchian entered into the mortgage modification process with Chase under the Home Affordable Modification Program (HAMP).

HAMP modifications proceed in two steps.[1] Step One involves the mortgage servicer of an eligible homeowner offering the homeowner a Trial Period Plan (TPP) agreement. A TPP agreement allows the homeowner to make modified mortgage payments for a specified term. If all conditions of the TPP agreement are satisfied, the homeowner then proceeds to Step Two, at which point he is offered a permanent loan modification agreement that outlines the terms of the final modification.

---

[1]"The court may consider, in addition to the pleadings, materials 'embraced by the pleadings' and materials that are part of the public record." In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)). We have done so here to provide background information regarding HAMP.

Under the TPP agreement, Topchian made seven required monthly payments of $985, making the last payment in December 2009. In January 2010, Topchian received the Agreement from Chase for the permanent modification of his loan. The Agreement provided that Topchian's loan modification would automatically become effective on March 1, 2010, as long as all the preconditions set forth in the Agreement were satisfied. Two of these preconditions are relevant to this appeal. First, the loan would not be modified unless and until Chase signed and returned a copy of the Agreement to Topchian. Second, Topchian was required to make all the payments specified by the TPP agreement. Topchian signed the Agreement and mailed it to Chase before the January 14, 2010, deadline. Less than a week after mailing the Agreement, Topchian called Chase to check on the status of the Agreement, at which point Chase assured him that the Agreement was in its processing center.

In March 2010, Topchian made his first monthly payment of $957.32 in accordance with the terms of the Agreement. Chase rejected this payment. Upon discovering that Chase had not accepted his payment, Topchian called Chase and spoke with Lad Freeman, an executive director. Freeman told Topchian that Chase had not received the signed Agreement.

Topchian immediately sent Chase another copy of the signed Agreement and payments for March and April 2010. Freeman apologized for the "mess," explaining that Chase's loan files were in disorder because of its recent merger with Washington Mutual Bank. Topchian sought proof of the finalization of the loan modification by requesting that Chase sign and return the Agreement to him. Freeman responded by assuring Topchian that the Agreement had been accepted, but informed Topchian that Chase would not send proof of this acceptance.

Chase accepted Topchian's March and April payments. Topchian continued to make payments, which Chase accepted for the following eight months, through December 2010. In December 2010, Topchian was contacted by Freeman, who

notified him that he needed to send more paperwork to update his existing HAMP paperwork and that he would receive a signed copy of the Agreement from Chase after the paperwork was updated. Topchian cooperated with a Chase representative for several months to update his HAMP paperwork.

In January 2011, Chase instructed Topchian to stop making payments because of the paperwork update, which he did. Seven months later, in August 2011, Chase sent Topchian a letter denying his request for a loan modification. Following this letter, Chase attempted to foreclose on Topchian's property on at least two occasions.

On June 21, 2012, Topchian filed a *pro se* petition in Missouri state court seeking $3 million in damages from Chase. Topchian's petition was styled as a letter that detailed facts but did not contain legal theories for his claims. Chase removed the case to federal district court on the basis of diversity jurisdiction. Chase then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). The district court denied the motion to dismiss but granted the motion for a more definite statement, directing Topchian to file an amended complaint.

Topchian's amended complaint restated some of the facts from his petition and introduced new facts but still did not include legal theories for his claims. Chase moved to dismiss the amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Although Topchian had not mentioned any legal theories in his amended complaint, Chase proposed to the court six legal theories under which Topchian could conceivably seek recovery: violation of HAMP, negligent infliction of emotional distress, intentional infliction of emotional distress, attempted wrongful foreclosure, violations of the Fair Credit Reporting Act, and fraud. Chase argued in its motion to dismiss that each of these claims failed on the pleadings. Topchian did not file a response to Chase's motion before the

deadline, and the district court ordered Topchian to show cause for why it should not grant Chase's motion to dismiss. Topchian thereafter filed a response, but it did not address any of Chase's six proposed legal theories. The district court then granted Chase's motion to dismiss, analyzing each of Chase's proposed legal theories and reasoning that HAMP creates no private right of action and that, to the extent that Topchian attempted to state a claim under Missouri law, Topchian had not pleaded a plausible claim under Ashcroft v. Iqbal, 556 U.S. 662 (2009). The district court later denied Topchian's motion for reconsideration. Topchian appeals.

## II. Discussion

Topchian argues that the district court erred by dismissing his case because his allegations of fact sufficiently state a claim for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. "We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Simes v. Ark. Judicial Discipline & Disability Comm'n, 734 F.3d 830, 834 (8th Cir. 2013) (quoting Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012) (per curiam)). Because Chase removed this case to federal court based on diversity of citizenship, we apply federal procedural rules but Missouri substantive law. Ashley County v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999) (quoting Redland Ins. Co. v. Shelter Gen. Ins. Cos., 121 F.3d 443, 446 (8th Cir. 1997)). "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1057-58 (8th Cir. 2002); see also Quinn-Hunt v. Bennett Enters., Inc., 122 F. App'x 205, 207 (6th Cir. 2005) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim. Factual allegations alone are what matters." (quoting Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1998))). "Accordingly, a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974).

A pro se complaint must be liberally construed, Estelle v. Gamble, 429 U.S. 97, 106 (1976), and "pro se litigants are held to a lesser pleading standard than other parties[,]" Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

-6-

## A. Waiver

As a threshold matter, we must determine whether Topchian's claims are properly before us. Chase contends that they are not, because Topchian has asserted them for the first time on appeal.

Although we do not address legal or factual claims presented for the first time on appeal, Stone, 364 F.3d at 914, there is a difference "between adding claims on appeal and fleshing out claims that were initially inartfully pled[,]" Jackson v. Nixon, 747 F.3d 537, 544 (8th Cir. 2014). Construed properly, Topchian's factual allegations may provide foundation for the claims that he advances on appeal. Because it is the facts alleged in a complaint, and not the legal theories, that state a claim, Parkhill, 286 F.3d at 1057-58, and because federal courts must examine a complaint to determine if the allegations set forth a claim for relief, Bramlet, 495 F.2d at 716, we must decide whether Topchian has pleaded sufficient facts in his amended complaint to state a claim under any legal theory. If he has, his amended complaint should not have been dismissed. Topchian has not alleged new facts, nor does his appeal raise claims that are not based on the facts that he has alleged in his amended complaint. Cf. Stone, 364 F.3d at 914-15 (refusing to supply additional facts or to construct a legal theory for the plaintiff that assumed facts that had not been pleaded).

Accordingly, we look to Topchian's amended complaint to determine whether Topchian has alleged sufficient facts to state a claim for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment.[2] "[W]e

---

[2]Chase additionally argues that we should affirm the dismissal because Topchian failed to raise the claims in his opposition to Chase's motion to dismiss. Chase relies upon two cases from the United States Court of Appeals for the Seventh Circuit. See McHenry v. Ins. Co. of the W., 438 F.3d 813, 817-20 (7th Cir. 2006) (holding that the district court did not err by failing to address the represented plaintiff's waiver argument because although the plaintiff mentioned its waiver

interpret Missouri law in determining whether the elements of the offenses have been pled." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1062 (8th Cir. 2005).

## B.  Merits

### 1.  Breach of Contract

Topchian contends that he has pleaded a breach-of-contract claim.  "A breach of contract action includes the following essential elements:  (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."  Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010) (en banc).  "A valid contract contains the essential elements of 'offer, acceptance, and bargained for consideration.'"  Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members, 364 S.W.3d 615, 622 (Mo. Ct. App. 2012) (quoting Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. 1988) (en banc)).

Chase argues that Topchian has not stated a claim for breach of contract because Chase did not accept Topchian's offer to permanently modify his loan in the form prescribed by the Agreement.  According to Chase, the Agreement required

argument in a few paragraphs of its complaint, it failed to make any reference to the argument in its opposition to the defendant's motion to dismiss); Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999) (affirming the district court's dismissal of the plaintiff's complaint because the facts that the plaintiff had alleged did not state a claim that was based on existing law and the plaintiff failed to show that her claim lay in the natural line of the law's development and should have been recognized as part of the law).  These cases are inapposite.  Topchian is a *pro se* plaintiff who repeated in his opposition to Chase's motion to dismiss some of the factual allegations that support his claims and whose claims have a basis in existing law.

Chase to manifest its acceptance by signing and returning a copy of the Agreement to Topchian. Chase thus argues that no contract was formed because it did not manifest its acceptance in the form prescribed by the offer. See Shortridge v. Ghio, 253 S.W.2d 838, 845 (Mo. Ct. App. 1952) ("The offerer has the right to prescribe the time, place, form or other condition of acceptance, in which case the offer can be accepted only in the way prescribed by the offer." (emphasis omitted) (quoting Hunt v. Jeffries, 156 S.W.2d 23, 27 (Mo. Ct. App. 1941))).

We disagree with the manner in which Chase has framed the issue. In our view, Chase made a written offer to permanently modify Topchian's original loan agreement when it sent the Agreement to him. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 234 (1st Cir. 2013) ("The TPP's plain terms therefore required Wells Fargo to offer [the homeowner] a permanent modification."); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 557 (7th Cir. 2012) ("After the trial period, if the borrower complied with all terms of the TPP Agreement—including making all required payments and providing all required documentation—and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification."). Topchian accepted the offer when he signed and returned the Agreement to Chase. That Chase was to sign and return the fully executed Agreement to Topchian is more properly characterized as a condition precedent.[3] Because a condition precedent must be satisfied before the contract becomes effective—and it is undisputed that Chase did not sign and return the

---

[3]Other courts that have considered HAMP agreements suggest that these types of provisions are conditions precedent. See, e.g., Pennington v. HSBC Bank USA, N.A., 493 F. App'x 548, 553 (5th Cir. 2012) ("We need not determine whether TPPs in general are contracts, because these plaintiffs have not met the conditions set by the TPPs and Modification Agreements. [The plaintiff's] allegations demonstrate her financial disqualification from the program; the bank never signed the . . . Modification Agreement for [the plaintiff], which is required for the provisions to take effect."); Wigod, 673 F.3d at 562 ("Here the TPP spelled out two conditions precedent to Wells Fargo's obligation to offer a permanent modification[.]").

Agreement—Topchian has stated a claim only if he has alleged facts showing that Chase had waived the condition. See Dallas v. Am. Gen. Life & Accident Ins. Co., 709 F.3d 734, 738 (8th Cir. 2013) ("[A] condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective." (quoting Morgan v. City of Rolla, 947 S.W.2d 837, 840 (Mo. Ct. App. 1997))); see also Gillis v. New Horizon Dev. Co., 664 S.W.2d 578, 580 (Mo. Ct. App. 1983) ("A party suing for breach of a contract must allege and prove performance of all conditions precedent, or he must allege and prove an excuse for their nonperformance." (quoting Iola Portland Cement Co. v. Ullmann, 140 S.W. 620, 626 (Mo. Ct. App. 1911))).

"A party may waive any condition of a contract in the party's favor and that waiver may be implied from conduct." Spencer Reed Grp., Inc. v. Pickett, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005) (citation omitted). "Whether a condition precedent is for the benefit of the [plaintiff], or the [defendant], or both, must be determined under the facts and circumstances of each case and by the language of the contract entered into between the parties." Pelligreen v. Wood, 111 S.W.3d 446, 451 (Mo. Ct. App. 2003). Waiver has been defined as:

> The intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling, and if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of the party showing, such purpose, and so consistent with intent to waive that no other reasonable explanation is possible.

Morgan, 947 S.W.2d at 840 (quoting Errante v. Kadean Real Estate Serv., Inc., 664 S.W.2d 27, 29 (Mo. Ct. App. 1984)).

Topchian has alleged sufficient facts to show waiver. As an initial matter, we assume that the condition was for the benefit of Chase and thus that it was Chase's

-10-

condition to waive.  See Pennington, 493 F. App'x at 553 (holding in favor of the bank because the conditions of the modification agreement had not been met since the bank never signed the modification agreement for the plaintiff).  The amended complaint alleges that Chase waived the condition in two ways.  First, Chase expressly waived the condition when Freeman told Topchian that Chase had accepted the Agreement and that Chase would not provide proof of the finalization of the modification by signing and returning the Agreement to Topchian.[4]  Second, Chase manifested its intent to waive the condition by accepting payments in the amount set forth in the Agreement for ten months because Chase does not accept payments that are less than the amount upon which it has agreed.  We thus conclude that Topchian has alleged sufficient facts to show that Chase waived the condition precedent in order to effectuate the modification of the loan.

Even if Chase's characterization is correct—that the provision requiring Chase to sign and return the Agreement is a limitation on the mode of acceptance rather than a condition precedent—Topchian has pleaded sufficient facts to support a claim for breach of contract.  "An offer in writing need not be assented to by signing the offer, but may be accepted orally, unless the offer requires its acceptance to be in writing, in which case it must be thus accepted and a verbal acceptance is insufficient unless it is assented to by the offerer[.]"  Shortridge, 253 S.W.2d at 845 (quoting 17 C.J.S. Contracts § 42); accord Keltner v. Sowell, 926 S.W.2d 528, 531 (Mo. Ct. App. 1996) (stating that the requirement of a written notice of acceptance in a contract may also be waived by an oral agreement of the parties or by their conduct).  The amended

---

[4]Because the amended complaint alleges that when Freeman made these statements an enforceable contract was formed, a reasonable inference may be made that Freeman is an agent of Chase with the authority to bind Chase to the contract. See Agri Process Innovations, Inc. v. Envirotrol, Inc., 338 S.W.3d 381, 387, 387 n.3 (Mo. Ct. App. 2011) (recognizing that Missouri law permits an agent to bind a disclosed principal when the agent enters into a contract within the scope of his actual or apparent authority).

-11-

complaint alleges that Freeman told Topchian that Chase had accepted the Agreement and that Chase would not send proof of the acceptance in writing as set forth in the Agreement. Thereafter, Topchian proceeded to make payments pursuant to the Agreement. Thus, Topchian has alleged that he assented to Chase's verbal acceptance. See, e.g., Kopff v. Deves, 324 S.W.2d 768, 771 (Mo. Ct. App. 1959) ("There is no doubt that the [offeree] told the [offerer] to proceed with the work after he made the offer and he did proceed. . . . The contention that because the offer was not signed by [the offeree] made invalid the oral contract embodying the offer, is without merit.").

Chase also argues that no enforceable contract was formed because Topchian failed to satisfy the condition precedent that all payments under the TPP agreement be made to effectuate the permanent loan modification. Chase contends that Topchian did not make payments in January and February 2010, but Topchian has alleged that he made the required payments under the TPP agreement. Accordingly, taking as true the facts alleged in the amended complaint, Topchian has satisfied the condition.

Lastly, Chase contends that, in the event that we conclude that it had orally accepted the Agreement, Topchian has not stated a claim for breach of contract because the statute of frauds prohibits an oral agreement to modify a mortgage. Equitable exceptions to the statute of frauds generally fall into three broad categories: perpetration of fraud, partial or full performance, and promissory estoppel. Mika v. Cent. Bank of Kansas City, 112 S.W.3d 82, 88-89 (Mo. Ct. App. 2003). At a minimum, Topchian has alleged the partial performance of his obligations under the Agreement and thus has alleged sufficiently that an equitable exception applies. See Piazza v. Combs, 226 S.W.3d 211, 227 (Mo. Ct. App. 2007) ("The requirement of full performance . . . 'has been relaxed in recent years to require only partial performance upon the party seeking the benefit of the oral contract, where the party has so materially changed his position that the use of the statute of frauds to deny

-12-

enforcement of the agreement would, itself, amount to a fraud.'" (quoting Straatmann v. Straatmann, 809 S.W.2d 95, 99 (Mo. Ct. App. 1991))).

Thus, by alleging sufficient facts to show that the elements of a contract exist, that the conditions precedent were satisfied or waived, and that an exception to the statute of frauds applies, Topchian has stated a claim for breach of contract.

## 2. Fraudulent Misrepresentation

Topchian contends that Freeman's assurance that Chase had accepted the Agreement constituted a fraudulent misrepresentation.[5]  To state a claim for fraudulent misrepresentation, a plaintiff must allege facts to support the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 131-32 (Mo. 2010) (en banc).

Topchian has not alleged that Freeman knew that his representation was false or that he was reckless as to whether it was true or false.  The amended complaint

---

[5]Again, Topchian's allegations impute Freeman's statements to Chase.  See Gibson v. Brewer, 952 S.W.2d 239, 245-46 (Mo. 1997) (en banc) (delineating the rule that a principal is liable for its agent's acts that are within the scope of employment and done as a means or for the purpose of doing the work assigned by the principal).

alleges that the Agreement required that Chase sign and return the Agreement to Topchian in order to effectuate the loan modification. It also alleges that Topchian was assured by Freeman, an executive director at Chase, that Chase had accepted the Agreement despite the fact that Chase would not sign and return the Agreement. The amended complaint, however, does not allege any circumstances surrounding Freeman's statement from which we may reasonably infer that Freeman either knew that his statement was false or that he was reckless as to its falsity. The facts that Topchian has alleged might be consistent with Freeman having known that his statement was false, but the alleged facts are equally consistent with a scenario in which Freeman fully and reasonably believed that his statement was true. See Iqbal, 556 U.S. at 678. Accordingly, Topchian has failed to state a claim for fraudulent misrepresentation.

### 3. Negligent Misrepresentation

Topchian bases his negligent misrepresentation claim on the same representation that is the basis of his fraud claim. To state a claim for negligent misrepresentation, a plaintiff must allege facts that support the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

Renaissance Leasing, 322 S.W.3d at 134.

We conclude that Topchian has failed to state a claim for negligent misrepresentation based on reasoning that parallels our reasoning above. Topchian has not alleged facts to support a finding that Freeman failed to exercise reasonable

-14-

care.  Topchian did not describe any steps that Freeman took or failed to take to determine whether Chase had, in fact, accepted the Agreement.  Again, Topchian has alleged facts that might be consistent with Freeman having acted negligently, but the alleged facts are equally consistent with Freeman having exercised reasonable, though perhaps ultimately ineffective, care to investigate the truth of his statement. See Iqbal, 556 U.S. at 678.  As such, Topchian has failed to state a claim for negligent misrepresentation.

### 4.  Unjust Enrichment

Topchian argues that even if the Agreement is not enforceable, he has stated a claim for unjust enrichment because he made the payments under the TPP agreement and ten months of payments under the Agreement, which were retained by Chase even though Chase made attempts to foreclose on Topchian's property. Topchian also argues that while he may have owed Chase the money, late fees and penalties accrued on the original note while he made the payments.

"A claim for unjust enrichment has three elements:  a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." Hertz Corp. v. RAKS Hospitality, Inc., 196 S.W.3d 536, 543 (Mo. Ct. App. 2006).  There can be no unjust enrichment claim, however, where an express contract exists.  Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

Assuming the Agreement is not enforceable, an express contract nevertheless exists because the parties are still bound by the original loan agreement. Moreover, Topchian has failed to allege that he provided a benefit to Chase to which Chase was not entitled.  Topchian's amended complaint makes no reference to fees or penalties that accrued on the original note.  The only benefit that Topchian conferred on Chase

that Topchian has alleged is the value of the mortgage payments under the TPP agreement and the Agreement. These payments were conferred in exchange for his property, which he retained for the months that he made the payments. Thus, Topchian has not stated a claim for unjust enrichment because an express contract exists and he has failed to allege that he has conferred a benefit on Chase whose retention by Chase would be unjust. See, e.g., Bohnhoff v. Wells Fargo Bank, N.A., 853 F. Supp. 2d 849, 857 (D. Minn. 2012) (dismissing an unjust enrichment claim when the mortgagor had a preexisting duty to make loan payments).

## III. Conclusion

Topchian's amended complaint alleges sufficient facts to state a claim for breach of contract. Our holding should not be read as imposing any sweeping duty upon district courts to devise legal theories for *pro se* plaintiffs. Rather, a complaint should be found to raise a claim only "if the essence of an allegation is discernable, even though it is not pleaded with legal nicety[.]" Stone, 364 F.3d at 915. Here, the essence of Topchian's breach-of-contract claim was discernable because he attached the Agreement—a contract—to his pleadings and alleged that Chase had not complied with that contract. See Rabé v. United Air Lines, Inc., 636 F.3d 866, 872 (7th Cir. 2011) (recognizing that, where the *pro se* plaintiff had attached her employment contract to her complaint, she had raised "implicit state law claims for breach of contract and/or promissory estoppel[,]" even though her "complaints ha[d] not articulated breach of contract and promissory estoppel theories"); cf. Coleman v. Correct Care Solutions, 559 F. App'x 601, 602 (8th Cir. 2014) (per curiam) (holding that the *pro se* plaintiff adequately raised a race-discrimination claim by attaching the EEOC complaint containing race-discrimination allegations to her pleadings).

The judgment is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings consistent with this opinion.

_____