# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1723
_____

Kimberly Watso, individually and on behalf of C.H. and C.P., her minor children;
Kaleen Dietrich

*Plaintiffs - Appellants*

v.

Tony Lourey, in his official capacity as Commissioner of the Department of
Human Services; Scott County; Judge John E. Jacobson, in his official capacity;
Tribal Court of the Red Lake Band of Chippewa Indians; Judge Mary Ringhand,
in her official capacity; Tribal Court of the Shakopee Mdewakanton Sioux
(Dakota) Community

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: March 12, 2019
Filed: July 16, 2019
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

BENTON, Circuit Judge.

Kimberly Watso, individually and for her minor children C.P. and C.H., and
her mother Kaleen Dietrich sued the Department of Human Services Commissioner,

Scott County, two tribal courts, and related tribal judges. They contested the tribal court's jurisdiction over C.P. and C.H.'s child custody proceedings. The district court[1] dismissed the complaint. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Neither Watso nor Dietrich are Indian. Watso's children are both Indian. C.P. is a member of the Red Lake Band of Chippewa Indians through his father Donald Perkins. C.H. is a member of the Shakopee Mdewakanton Sioux (Dakota) Community (SMSC) through his father Isaac Hall.

In January 2015, the SMSC Family and Children Services Department filed an emergency ex parte petition in SMSC Court alleging C.P. and C.H. were children in need of assistance and seeking to transfer custody to the SMSC's Child Welfare Office. This petition initiated child protection proceedings in SMSC Court. At a hearing the following week, Watso disputed the SMSC Court's jurisdiction. The next month, Watso and Hall brought C.H. to a medical clinic. The clinic reported possible child abuse and neglect. A county Police Department issued a Notice of a 72-Hour Police Health and Safety Hold and notified the parents that C.P. and C.H. would be held at Children's Hospital in St. Paul.

The Indian Child Welfare Manual (the Manual) of the Minnesota Department of Human Services instructs local social service agencies to refer proceedings involving the welfare of tribal-member children to "the tribal social service agency for appropriate proceedings in tribal court." Consistent with these instructions, Scott County officials contacted the SMSC Family and Children Services Department. The Department filed a second ex parte motion in SMSC Court, seeking to transfer legal

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Katherine M. Menendez, United States Magistrate Judge for the District of Minnesota.

and physical custody of C.H. and C.P. Watso was notified. She objected to the SMSC Court's jurisdiction. The SMSC Court overruled her objection and transferred temporary legal and physical custody of C.P. and C.H. to SMSC Family and Children Services Development.

In January 2017, the Red Lake Band moved to dismiss the proceedings regarding C.P. The SMSC Court granted the motion, allowing the Red Lake Band jurisdiction over C.P. The Red Lake Band Court appointed Dietrich as C.P.'s guardian. As C.H.'s guardian, the SMSC Court appointed a paternal great-aunt and tribal member.

Watso (individually and for C.P. and C.H.) and Dietrich sued Department of Human Services Commissioner Emily Piper, Scott County, SMSC, the SMSC Court, SMSC Judge John E. Jacobson, the Red Lake Band, the Red Lake Band Court, and Red Lake Band Judge Mary Ringhand. They allege that the transfer of custody violated the Indian Child Welfare Act of 1978 (ICWA) and their federal constitutional rights. The district court dismissed the complaint. This court reviews a grant of a motion to dismiss de novo, accepting as true all factual allegations in the complaint, and drawing all reasonable inferences in the nonmovant's favor. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

According to Watso and Dietrich, part of the Manual is preempted by the ICWA. They allege the Manual unlawfully instructed Scott County to refer C.P. and C.H.'s child custody proceedings to a tribal court because the referral conflicts with the ICWA, which vests jurisdiction first with the states. This argument fails because the ICWA does not vest jurisdiction first with the states.

Watso and Dietrich invoke the ICWA provision about the process for state courts to transfer child custody proceedings to tribal courts:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

**25 U.S.C. § 1911(b)**. Watso and Dietrich believe this provision means that "the tribe does not have jurisdiction over a child held by the state until the state court transfers jurisdiction to the tribe, which can only occur after a state court ICWA hearing." To the contrary, § 1911(b) does not require a state court hearing. Section 1911(b) addresses the transfer of proceedings from state court to tribal court. Here, there were no state court proceedings. There was no transfer from state court to tribal court. Section 1911(b) does not apply.

Watso and Dietrich counter that § 1911(b) applies because there was a transfer from the state to the tribal court when Scott County officials, agents of the state, referred C.P. and C.H.'s child custody proceedings to SMSC Court. This misreads the statute. Section 1911(b) applies to transfers from a "State court proceeding," not from a state agency.

The ICWA "establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child 'who resides or is domiciled within the reservation of such tribe,' as well as for wards of tribal courts regardless of domicile." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989), *quoting* **25 U.S.C. § 1911(a)**. It "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation." *Id.*, *citing* **25 U.S.C. §**

**1911(b)**.[2]  There is no conflict between the Manual's requirement that local social service agencies refer child custody proceedings involving Indian children to tribal social service agencies for proceedings in tribal court, and the ICWA's recognition of exclusive or presumptive tribal jurisdiction for child custody proceedings involving Indian children.

Watso and Dietrich next argue that Public Law 280 requires a state court hearing before a tribal court can exercise jurisdiction.  Public Law 280 states in part:

> [Minnesota] shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in [Indian country within Minnesota, except the Red Lake Reservation] to the same extent that [Minnesota] has jurisdiction over other civil causes of action, and those civil laws of [Minnesota] that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within [Minnesota].

**28 U.S.C. § 1360(a)**.  Public Law 280 does not require a state court hearing or any state court proceedings.  *See **Walker v. Rushing***, 898 F.2d 672, 675 (8th Cir. 1990) ("Nothing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority."); ***Doe v. Mann***, 415 F.3d 1038, 1063 n. 32 (9th Cir. 2005) ("Public Law 280 states have only concurrent jurisdiction with the tribes over child custody proceedings involving Indian children."), *citing **Native Village of Venetie I.R.A. Council v. State of Alaska***, 944 F.2d 548, 562, 559–62 (9th Cir. 1991) (rejecting argument that Public Law 280 vested enumerated states with exclusive jurisdiction).  The SMSC Court's jurisdiction over C.P. and C.H.'s child custody proceedings is consistent with Public Law 280.

---

[2]The record contains muddled information about C.H. and C.P.'s residency, domicile, and whether they became wards of the SMSC Court.  This court need not resolve these issues here.

Lastly, Watso and Dietrich allege that the absence of a state court proceeding violated their due process rights, based on parents' fundamental right "to make decisions concerning the care, custody, and control of their children." ***Troxel v. Granville***, 530 U.S. 57, 66 (2000) (invalidating state law that allowed any third party to petition state courts for child visitation rights over parental objections). They allege due process rights "to object and to stop the transfer, a right to notice and a right to a meaningful court hearing." Watso and Dietrich had sufficient notice of the tribal court proceedings. They were heard in tribal court. They have presented no evidence of a due process violation.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____