Karen King Mitchell, Judge
Samvel Topchian appeals the judgment of the Circuit Court of Jackson County, Missouri, granting summary judgment to JPMorgan Chase Bank, N.A. (Chase), Martin, Leigh, Laws & Fritzlen, PC (MLLF), and Select Portfolio Servicing, Inc. (SPS) on Topchian's claims of breach of contract (against Chase), violations of the Missouri Merchandizing Practices Act (MMPA) (against Chase, MLLF, and SPS), and common law fraud (against Chase). In granting Chase's motion for summary judgment, the circuit court concluded that Topchian's claims were precluded by a judgment implementing the settlement of a federal class action and that a collateral attack on that judgment was inappropriate. In granting MLLF's and SPS's motions for summary judgment, the circuit court held that those parties were released from Topchian's MMPA claims by the prior judgment. On appeal, Topchian argues that the circuit court erred in granting summary judgment because: (1) the class action judgment was entered without personal jurisdiction over Topchian or adequate notice to him, (2) Topchian was denied adequate representation by counsel for the class, (3) Topchian was denied adequate representation by class representatives, (4) the class action settlement was the product of fraud, and (5) the claims released by the class action judgment are different from the claims Topchian asserts in this case. Finding that *883 summary judgment is appropriate, we affirm.
Background[1]
On or about September 1, 2005, Topchian borrowed $221,000, as evidenced by a 30-year deed of trust bearing his signature and referencing a promissory note he signed to document the loan. Chase serviced the loan at all times relevant to the events forming the basis of Topchian's claims. Topchian experienced financial difficulties, and, beginning in 2009, he participated in a Stated-Income Trial Period Plan (TPP) under the Home Affordable Modification Program (HAMP). The TPP required Topchian to submit "trial plan" payments to Chase as a prerequisite to a possible permanent loan modification. Topchian made trial payments under the TPP from May to December 2009. In December 2009, Topchian received a "Home Affordable Modification Agreement" from Chase. That Agreement stated that it would not take effect unless certain preconditions were satisfied, including (1) timely payments by Topchian, (2) continued accuracy of representations he had made, and (3) receipt by Topchian of a copy of the Agreement bearing Chase's signature. It is undisputed that Topchian never received a copy of the Agreement signed by Chase.[2]
Pursuant to the TPP, Topchian made payments at the lower, modified rate throughout 2010, but, beginning in January 2011, Chase refused to accept his payments. Previously, on June 8, 2010, Chase had sent Topchian a letter stating, "we are not considering your request for a modification because you notified us that you are withdrawing your request or you have failed to accept the Trial Period Plan or Home Affordable Modification within the required time period." Then, in December 2010, Chase apparently contacted Topchian to update his paperwork so he could receive a signed copy of the modification from Chase. Again on February 9, 2011, Chase informed him, "We are writing about your request for a permanent loan modification on the account above. We are unable to offer you a modification through [HAMP] at this time." On August 19, 2011, and August 22, 2011, Chase again provided the same written notice of modification denial to Topchian.
MLLF signed an engagement letter with Chase on April 12, 2011, agreeing to act as attorney for Chase, represent it in bankruptcy and foreclosure matters, and provide legal services and representation. MLLF, as Chase's attorney and trustee, sent correspondence to Topchian regarding his failure to make payments pursuant to the original note. Specifically, on February *884 6, 2012, MLLF sent Topchian a letter stating "[MLLF] has been retained by JPMorgan Chase Bank, National Association to act as trustee to foreclose the above Deed of Trust." Then on February 29, 2012, MLLF sent Topchian a "Notice of Trustee's Sale" signed by MLLF as "Successor Trustee."[3] There has been no foreclosure sale on the property securing Topchian's loan.
Meanwhile, in October 2011, cases in which various plaintiffs had sued Chase in separate lawsuits in 2010 and 2011 were consolidated into a multi-district class action lawsuit styled JPMorgan Chase Mortgage Modification Litigation , MDL Docket No. 2290, Case No. 1:11-md-02290-RGS, in the United States District Court for the District of Massachusetts. The consolidated actions pertained to Chase's handling of mortgage borrowers' requests for modifications of their loans. Following consolidation, plaintiffs filed an amended class action complaint on January 20, 2012. Part I of the class action complaint asserted claims for breach of contract and violations of state consumer protection statutes arising from Chase's alleged breach of TPP agreements under HAMP. Specifically, in Part I, the plaintiffs alleged that
[i]n their TPP Agreements, proffered under HAMP, ... Chase set forth a finite "trial period," and promised that successful compliance with the [A]greement would result in the tender of a permanent loan modification. Plaintiffs, for their part, have fully complied with these [A]greements by submitting the required documentation and making payments. Despite Plaintiffs' full performance, Chase has failed to meet its contractual obligation to tender promised permanent modifications, or even to notify Plaintiffs by the trial period deadline that they would not be receiving a permanent modification.
Part III of the class action complaint included three underlying complaints involving claims that Chase breached final loan modification agreements either by continuing to treat the accounts as if no modification had occurred or by canceling the modifications without notice several months after the modifications had been granted.[4] Part III set out claims for breach of contract and violations of state consumer protection laws, including the MMPA, arising from Chase's failure to honor such modification agreements. The class action complaint specifically referenced the MMPA because two of the named plaintiffs were residents of Missouri. The class action complaint also alleged violations of common law.
On June 15, 2012, Topchian filed a pro se petition in the Small Claims Court of the *885 Circuit Court of Jackson County, Missouri, seeking $3 million in damages from Chase for breach of contract. His petition was in the form of a letter that set out detailed facts but did not provide any legal basis for his claims. Chase removed the case to the U.S. District Court for the Western District of Missouri on the basis of diversity jurisdiction. Chase then filed a motion to dismiss or, in the alternative, a motion for a more definite statement. The district court denied the motion to dismiss but granted the motion for a more definite statement, directing Topchian to amend his petition. His amended petition included some additional facts, but no legal theories, and Chase moved to dismiss the amended petition under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted the motion to dismiss and later denied Topchian's motion for reconsideration. He appealed the dismissal of his amended petition to the U.S. Court of Appeals for the Eighth Circuit. While Topchian's appeal was pending, his current attorneys agreed to represent him. The Eighth Circuit reversed, in part, and remanded the district court's grant of Chase's motion to dismiss, finding that Topchian had stated a claim for breach of contract. Topchian v. JPMorgan Chase Bank, N.A. , 760 F.3d 843, 851 (8th Cir. 2014).[5]
While Topchian's pro se case was pending, SPS became the sub-servicer of Topchian's loan on May 3, 2013, under a Limited Power of Attorney. At that point, SPS became Chase's true and lawful Attorney-In-Fact with respect to Topchian's loan.
In November 2013, the class representatives and Chase reached a Settlement Agreement in the federal class action, for which they jointly sought the court's approval. Consistent with the class action complaint, the Settlement Agreement included assertions that Chase "breached agreements with the Plaintiffs by failing to provide a modification of Plaintiffs' loans under HAMP ... and "breached the terms of permanent loan modifications." The court held a preliminary approval hearing on December 5, 2013, which included evidence and argument by class counsel and Chase. The next day, the court issued a Preliminary Approval Order directing implementation of the Settlement Agreement and certifying a class for that purpose. The Preliminary Approval Order directed that notice be sent to Chase borrowers who were identified as potentially being in the class. Topchian was on the list of potential class members, and notice of the settlement was mailed to him. He admitted receiving the notice in January 2014.
The notice Topchian received (Class Notice) was titled "NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT RELATED TO YOUR JPMORGAN CHASE LOAN MODIFICATION." The Class Notice stated, "You are a 'Settlement Class Member' if:
*886 (1) your loan is serviced by Chase and you participated in a [TPP] extended by Chase under the [HAMP] ..., and
(2) you made timely and sufficient trial payments required by the TPP, and
(3) your property has not been foreclosed, and
(4) you have either (a) not received a permanent loan modification eligibility decision since the start of your trial period described in your ... TPP, or (b) you did receive an eligibility decision denying the loan for permanent modification during or after your trial period described in your ... TPP, and
(5) you are not currently a debtor in bankruptcy proceedings.[6]
In a later section titled "Who Represented Me?" the Class Notice stated, "The following Plaintiffs have or had mortgage loans that were serviced by Chase and also sought (or sought and obtained ) permanent loan modifications from Chase." (Emphasis added.)
The Class Notice included an opt-out procedure and stated, "If you do not opt out, you will be bound by this Settlement." The Class Notice outlined the release of claims effectuated by the settlement, and advised class members as follows:
If you, or someone acting on your behalf, are currently litigating claims against Defendants or other released parties that are the same as or similar to those addressed here, you will be barred from pursuing the claims released by the Settlement unless you validly opt out, as described [herein].[7]
....
Unless you exclude yourself, you will be part of the Settlement Class, and that means that any claims you have about Chase's consideration of, and other conduct in connection with, your request to have your home mortgage loan modified will be fully and completely resolved, and that you cannot sue, continue to sue, or be part of any other lawsuit against Chase about Chase's handling of your request for a loan modification.
....
If you want to keep the right to sue or continue to sue Chase, on your own, about Chase's handling and consideration of your request for a loan modification, you must exclude yourself from the Settlement Class in this case.
The Class Notice provided detailed instructions for opting out and announced the opt-out deadline of March 18, 2014, in bold typeface. Topchian did not opt out because he did not interpret the "Settlement Class," as described in the Class Notice, to include individuals like himself who allegedly had received permanent loan modifications that were subsequently breached by Chase. Therefore, he saw no need to take any action in response to the Class Notice. To support his decision not to act, Topchian now relies on the Eighth Circuit's opinion in Topchian v. JPMorgan Chase Bank, N.A. , 760 F.3d 843 (8th Cir. 2014), reversing the district court's grant of Chase's motion to dismiss Topchian's pro se case because he had pleaded sufficient facts to state a claim for breach of *887 contract against Chase.[8]
In other relevant sections, the Class Notice included instructions for objecting to all or any part of the Settlement Agreement while still remaining a member of the class and directed recipients to the settlement website for a complete copy of the Settlement Agreement. The Class Notice also stated,
If you have your own attorney, you may wish to have him or her review this Notice to get advice about how to proceed. This is particularly true if you have litigation pending on any subject including mortgage modification and/or foreclosure against Chase.... You have the right to consult with your own attorney, at your own expense, before deciding how best to proceed.
Finally, the Class Notice explained that, after final approval of the settlement, Chase would send all class members an invitation letter explaining "the process for making a new application for a mortgage modification based on your current circumstances." Other benefits provided by the Settlement Agreement, and listed in the Class Notice, included free debt and credit management counseling, foreclosure stays during the application process, and waiver of certain previously assessed fees in those cases where a new loan modification is approved.
The class action court held a Final Fairness Hearing on May 7, 2014, following which the court entered a Final Approval Order, Final Judgment, and Order of Dismissal with Prejudice. The class action judgment, which included the same definition of "Settlement Class," set forth several findings relevant to this case. First, the court found that the Settlement "Agreement is the product of good faith, arm's-length negotiations by Parties, with the substantial involvement of an independent, nationally respected mediator, and that each Party was represented by experienced counsel." Next, the court found that it had "subject matter jurisdiction over the Action, and, for purposes of this settlement only, personal jurisdiction over all the Parties, including all Settlement Class Members." In approving the Settlement Agreement, the court found the Agreement to be "in all respects, fair, just, reasonable, and adequate to the Settlement Class Members." Finally, the court found that the Class Notice "was provided to the Settlement Class consistent with the Preliminary Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law."
With respect to fees, costs, and awards, the class action judgment approved attorneys' fees and costs in the amount of $9.5 million and an incentive award of $3,500 to each Class Representative. The class action court determined that those amounts were appropriate based on the following findings:
(1) The [S]ettlement provides substantial benefits for the class.
(2) The settlement award of attorneys' fees and expenses is within the range of reasonable fees for similar class action settlements.
*888 (3) The requested fees are substantially below the total lodestar fees of Class Counsel, based on declarations submitted to the Court.
(4) The litigation raised numerous questions of law and fact, Class Counsel were opposed by highly skilled defense counsel, the litigation was intensely contested through the completion of the Settlement Agreement, and there was substantial risk that Plaintiffs would not prevail on some or all of their claims.
(5) The Settlement was negotiated at arm's-length and without collusion, with the assistance of highly qualified mediators.
(6) The fees will be paid in addition to and will not diminish any class settlement.
On September 12, 2014, SPS, the then new sub-servicer of Topchian's loan, sent the required "invitation to reapply" letter to Topchian, acknowledging that he was "recently notified of the JPMorgan Chase Mortgage Modification class action settlement that took place in the United States District Court for the District of Massachusetts" and inviting him to complete a new application for a loan modification free of charge. Topchian admits receiving the "invitation to reapply" letter, but he did not reapply. Instead, on October 22, 2014, he dismissed his breach of contract suit then pending in the U.S. District Court for the Western District of Missouri following remand by the Eighth Circuit, and, on December 10, 2014, he filed the present lawsuit against Chase and added MLLF and SPS as defendants.
Topchian asserted four claims against Chase: (1) breach of contract, (2) violation of the MMPA in connection with the original sale of the loan, (3) violation of the MMPA in connection with the loan modification, and (4) common law fraud. He asserted one MMPA claim against MLLF, alleging that MLLF (1) attempted to collect on a debt it knew or should have known was invalid because Chase mishandled the [TPP], (2) sought payment on a debt it knew or should have known was invalid because of the [TPP], (3) failed to investigate the legitimacy of the debt before attempting to collect it, and (4) ignored Topchian's repeated statements that he was not in default. With respect to SPS, Topchian claimed that SPS, as the sub-servicer of Topchian's loan, sent him letters that incorrectly stated he was in default, requested payment amounts that were not due, and demanded payment different from the terms of his modification agreement.
Chase, MLLF, and SPS filed motions for summary judgment on the affirmative defenses of res judicata and release, claiming that, because Topchian received the Class Notice, he was a member of the Settlement Class, and he did not opt out, he is bound by the class action judgment. Topchian opposed the motions for summary judgment, arguing that (1) the federal district court in Massachusetts lacked personal jurisdiction over him; (2) he had received a permanent loan modification, and the Class Notice did not include borrowers like him who had permanent modifications; and (3) the class action judgment was improper on several grounds. The circuit court heard arguments on July 22, 2016. On January 10, 2017, the circuit court granted summary judgment in favor of Chase, MLLF, and SPS. Topchian filed this appeal.
Standard of Review
Whether the circuit court properly entered summary judgment "is purely *889 an issue of law which th[e c]ourt reviews de novo. " Hill v. Ford Motor Co. , 277 S.W.3d 659, 664 (Mo. banc 2009) (citing ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993) ). Under the de novo standard of review, appellate courts use the same decision criteria as the lower courts. In this case, that means we will affirm summary judgment if there is no genuine dispute as to any material fact and the moving parties are entitled to judgment as a matter of law. Rule 74.04(c)(6);[9] ITT Commercial Fin. Corp. , 854 S.W.2d at 378. For defendants seeking summary judgment on a properly pled affirmative defense, the facts required to support the defense must not be genuinely disputed. Id. at 381. Summary judgment will be upheld "if the facts alleged to be in dispute are actually the differing opinions of the parties concerning the legal effect of documents or actions determining their respective rights." Baker v. State Farm Mut. Auto. Ins. Co. , 806 S.W.2d 742, 743 (Mo. App. E.D. 1991).
Analysis
On appeal, Topchian claims the circuit court erred in granting summary judgment to Chase, MLLF, and SPS because (1) the class action judgment was entered without personal jurisdiction over him or adequate notice to him, (2) he was denied adequate representation by counsel for the class, (3) he was denied adequate representation by the class representatives, (4) the class action settlement was the product of fraud, and (5) the claims released by the class action judgment are different from the claims he asserts in this case. At their core, Topchian's claims on appeal can be restated as: (1) he was not a proper party to the class action judgment (Point I) and, even if he were, his claims against Chase, MLLF, and SPS are different from the claims resolved by the class action judgment (Point V); and (2) the class action judgment is improper and is subject to collateral attack by Topchian in this proceeding (Points II-IV). Finding that Topchian's claims against Chase, MLLF, and SPS are barred by res judicata and that a collateral attack on the class action judgment is not appropriate in this case, we affirm the circuit court's grant of summary judgment as to Chase, MLLF, and SPS.
Claims Against Chase
First, we consider Topchian's claims against Chase, which also form the basis of his claims against MLLF and SPS.
A. The Preclusive Effect of the Class Action Judgment
The circuit court granted Chase's motion for summary judgment based on its affirmative defense of res judicata. In determining whether res judicata (also called claim preclusion) bars Topchian's claims against Chase, we apply federal preclusion law. "The preclusive effect of a judgment is generally determined by the laws of the jurisdiction in which the judgment was rendered." State ex rel. Greitens v. Am. Tobacco Co. , 509 S.W.3d 726, 734 (Mo. banc 2017) ; Strobehn v. Mason , 397 S.W.3d 487, 494 (Mo. App. W.D. 2013). Here, the federal district court of Massachusetts issued the class action judgment, so we analyze Topchian's claims under federal res judicata law as interpreted by the United *890 States Court of Appeals for the First Circuit.[10]
On appeal, Topchian argues that the circuit court erred in granting summary judgment to Chase. But rather than focusing on the propriety of the circuit court's reliance on the doctrine of res judicata, Topchian claims that grounds exist to refuse to give "full faith and credit" to the federal court's class action judgment and, thus, it should not be enforced in Missouri. However, Topchian fails to cite any relevant First Circuit authority requiring the reviewing court to engage in a "full faith and credit" analysis of a judgment's enforceability in this context. To the contrary, the First Circuit has confirmed that a final judgment in a class action should be recognized without a corresponding review of "full faith and credit" considerations. Nottingham Partners v. Trans-Lux Corp. , 925 F.2d 29, 32-33 (1st Cir. 1991) (confirming the preclusive effect of a class action settlement and noting that although "appellants attempt, through various doctrinal and pedagogical manipulations, to have us review the propriety of the class certification and their inclusion in the class[,] ... a court-approved settlement containing a release may be applied against a class member ..., even if that member objects to the settlement, so long as acceptable procedural safeguards have been employed").[11] We believe that the starting point to address the propriety of the circuit court's grant of summary judgment is to determine whether the class action judgment satisfies the elements necessary for it to have preclusive effect under the doctrine of res judicata. In that vein, we first address those aspects of Topchian's arguments that relate to res judicata-specifically, his argument that his claims against Chase are different than the claims resolved in the class action (Point V), and that, because he received inadequate notice, he was not a party to the class action (Point I).
1. There are three elements for application of res judicata.
"Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action." Haag v. United States , 589 F.3d 43, 45 (1st Cir. 2009). To assert a defense of res judicata, a defendant must show that there was: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Dolan v. Chase Home Fin., LLC , No. 12-11662-GAO, 2015 WL 4776786, at *11 (D. Mass. July 10, 2015)[12] (quoting *891 Hatch v. Trail King Indus., Inc. , 699 F.3d 38, 45 (1st Cir. 2012) ).
2. The class action judgment is a final judgment on the merits.
The class action judgment was a final judgment on the merits, satisfying the first element of res judicata. Dolan , 2015 WL 4776786, at *12. In fact, Topchian admitted as much in his Surreply Suggestions in Opposition to Chase's Motion for Summary Judgment in this case. Despite this admission, Topchian is critical of the fact that the judgment in the earlier case resulted from a class action. However, "[i]t is ... well settled that claim preclusion may apply to bar a subsequent claim based on a prior adjudication of the claim in a class action." Id. at *11 ; see also Reppert v. Marvin Lumber & Cedar Co., Inc. , 359 F.3d 53, 56 (1st Cir. 2004) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.") (quoting Matsushita Elec. Indus. Co., Ltd. v. Epstein , 516 U.S. 367, 379, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ). Missouri courts, like courts elsewhere, recognize the legitimacy of a class action and its resulting res judicata effect. Morris v. Union Pac. R.R. Co. , 825 S.W.2d 911, 914-15 (Mo. App. E.D. 1992) (affirming circuit court's grant of summary judgment based on res judicata effect of a final judgment implementing a class action settlement).
3. There is sufficient identity of causes of action.
The second element of res judicata is sufficient identity between the causes of action asserted in the earlier and later litigation. In his fifth point on appeal, Topchian claims the circuit court erred in granting summary judgment to Chase because the class action involved claims arising from Chase's denial of permanent modifications, not claims such as his, where Chase entered into a permanent modification and later breached it. We disagree.
For purposes of this element, the First Circuit employs a transactional analysis, whereby identity exists "if both sets of claims-those asserted in the earlier action and those asserted in the subsequent action-derive from a common nucleus of operative facts." Dolan , 2015 WL 4776786, at *12 (quoting Breneman v. United States ex rel. F.A.A. , 381 F.3d 33, 38 (1st Cir. 2004) ). "In other words, as long as the 'new complaint grows out of the same transaction or series of connected transactions as the old complaint,' the causes of action are considered to be identical for res judicata purposes." Kale v. Combined Ins. Co. of Am. , 924 F.2d 1161, 1166 (1st Cir. 1991) (quoting Isaac v. Schwartz , 706 F.2d 15, 17 (1st Cir. 1983) ). If the two claims are "founded upon the same transaction, [arise] out of the same nucleus of operative facts, and [seek] redress for essentially the same basic wrong," the claims are sufficiently identical or related "notwithstanding any differences in remedies sought or theories of recovery pleaded." Id. ; see also Morris , 825 S.W.2d at 915 (plaintiff's failure to distinguish his new claims as being based on a different set of facts from those involved in the settled class action proved the appropriateness of defendant's res judicata defense, where the release approved in the settled class action waived all claims that were or could have been raised in the class action).
*892 Although the identity of causes of action element focuses on commonality of facts, and the theories of recovery need not be identical, Kale , 924 F.2d at 1166, it is noteworthy that, in this case, Topchian asserted four claims against Chase that mirror those raised by the plaintiffs in the class action. Topchian asserted: (1) breach of contract, (2) violation of the MMPA in connection with the original sale of the loan, (3) violation of the MMPA in connection with the loan modification, and (4) common law fraud. The crux of each of his claims is that Chase mishandled his TPP loan modification under HAMP because Chase ultimately did not honor his permanent modification but instead took steps to foreclose on his property. The factual basis for each of Topchian's claims are duplicative of the factual underpinning of the settled class claims.
The class breach of contract claims alleged that the plaintiffs "fully complied with their [TPP] Agreements" but that Chase "failed to meet its contractual obligation[s]." The class action also included allegations that Chase breached final loan modification agreements either by continuing to treat the accounts as if no modification had occurred or by canceling the modifications without notice several months after the modifications had been granted. Similarly, Topchian alleges his loan modification was a valid contract after he made "trial period payments" and he "performed the obligations required under the permanent modification," but "Chase refused to honor the permanent modification, refused to accept payments under the contract, and ultimately initiated foreclosure."
With respect to the MMPA, the class action complaint specifically alleged that Chase "violated the consumer protection and unfair and deceptive acts and practices laws of ... Missouri," citing " Mo. Rev. Stat § 407.020" because two of the named plaintiffs were residents of Missouri. The Complaint alleged that Chase "deceived ... and misled Plaintiffs as they sought loan modifications, frequently requesting duplicative information from them and holding foreclosure over their heads while continuing to collect monthly payments ... often foreclos[ing] in any event." Whether described in connection with the sale of the original loan or as a separate transaction for a modification, Topchian's allegations are strikingly similar. He claims that (1) Chase "told [him] ... he had a permanent modification" yet noticed a foreclosure anyway, (2) it was unfair for Chase to accept payments under the alleged modification before foreclosing, and (3) it was unfair to discuss modification "while moving towards foreclosure."
Topchian also asserts his final claim-one for common law fraud-based on facts very similar to those asserted in support of the deception claims in the class action complaint, which alleged that Chase's actions amounted to "common law violations," a term that includes common law fraud. Here, Topchian seeks "redress for essentially the same wrong" alleged in the class action complaint. Kale , 924 F.2d at 1166. Any alleged misrepresentations or "willful" breach of contract by Chase in handling Topchian's modification were part of the same transaction or "common nucleus of operative facts," as the other claims in the class action complaint. As the court held in Dolan , analyzing the very same class action judgment, "[t]he common nucleus of facts also includes Chase mishandling the loan applications and making misrepresentations about modifying the borrowers' loans." 2015 WL 4776786, at *12.
*893 Topchian argues that his current claims are different because he had a permanent modification. His argument fails to acknowledge that the class action complaint included three underlying complaints involving claims that Chase breached final loan modifications, and a plaintiff in one of those underlying complaints became a Class Representative. Like Topchian, that plaintiff alleged that she had a loan modification agreement with Chase, that Chase breached that agreement after accepting several payments from her under that agreement, and that Chase subsequently commenced foreclosure proceedings on her property. Part III of the class action complaint expressly set out claims for breach of contract and violations of state consumer protection laws arising from Chase's failure to honor final modifications. One factual underpinning for this class claim is that the TPP program was an offer to modify and that, once the debtor successfully completed the temporary program and Chase accepted the modified payments, the modification had occurred and Chase had no right to deny modification. Although Topchian's claim of an existing modification is based, in part, on an alleged oral representation by an agent of Chase that a modification had been approved even though Chase had not provided the required signed modification agreement, that factual difference alone is not enough to undercut the common nucleus of operative facts. In the present case, Topchian alleges that "Chase refused to honor the permanent modification, refused to accept payments under the contract, and ultimately initiated foreclosure." In view of the striking similarities between Topchian's current claims against Chase and those settled in the class action, we find there was sufficient identity among the causes of action to satisfy the second element of res judicata.[13] Topchian's Point V is denied as to Chase.
4. There is sufficient identity of parties between the two actions.
The third element of res judicata is sufficient identity between the parties. In Point I of this appeal, Topchian claims that giving res judicata effect to the class action judgment would violate his due process rights because the notice he received was "muddled" and inadequate to give the class action court jurisdiction over him. Because we agree with the circuit court that Topchian received adequate class notice, failed to opt out, and thus was a member of the class, we find the identity of parties element of res judicata was met.[14]
Class action courts require the named plaintiffs to deliver the "best practicable"
*894 notice to absent class members, which is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Phillips Petroleum Co. v. Shutts , 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The notice must "describe the action and the plaintiffs' rights in it," the absent plaintiffs must be given an opportunity to opt out of the class, and the named plaintiffs must "adequately represent the interests of the absent class members."[15] Id. ; see also Reppert , 359 F.3d at 56-57 (after a class action court gives notice that is reasonably calculated to inform absent class members, "if the absent class members fail to opt out of the class action, such members will be bound by the court's actions, including settlement and judgment"). The right to opt out is important because it "allow[s] for an inference of consent, which [i]s sufficient to support the class action court's jurisdiction over the class member who otherwise ha[s] no connection with [the forum state.]" Juris v. Inamed Corp. , 685 F.3d 1294, 1330 (11th Cir. 2012) (explaining the U.S. Supreme Court's ruling in Shutts regarding personal jurisdiction in the class action context).
Thus, personal jurisdiction is unique in class action cases: "a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." Shutts , 472 U.S. at 811, 105 S.Ct. 2965. Recognizing that "the class action was an invention of equity to enable [the court] to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder," the Supreme Court determined that a plaintiff in a class action suit need receive only "notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." Id. at 808, 812, 105 S.Ct. 2965.
In this case, the Class Notice was titled "NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT RELATED TO YOUR JPMORGAN CHASE LOAN MODIFICATION." The Class Notice stated:
You are a "Settlement Class Member" if:
(1) your loan is serviced by Chase and you participated in a [TPP] extended by Chase under the [HAMP] ..., and
(2) you made timely and sufficient trial payments required by the TPP, and
(3) your property has not been foreclosed, and
(4) you have either (a) not received a permanent loan modification eligibility decision since the start of your trial period described in your ... TPP, or (b) you did receive an eligibility decision denying the loan for permanent modification during or after your trial period described in your ... TPP, and
(5) you are not currently a debtor in bankruptcy proceedings.
The opening paragraph of the Class Notice stated, "You are eligible for benefits because you had a stated-income trial period plan during the relevant time period *895 that was not converted to a permanent modification or had a request for a permanent modification denied." (Emphasis added.) The Class Notice also described the plaintiffs as those who "have or had mortgage loans that were serviced by Chase and also sought (or sought and obtained ) permanent loan modifications from Chase." (Emphasis added.) Clearly, the Settlement Class included people who, like Topchian, alleged they had permanent modifications that Chase breached.
Topchian's loan was serviced by Chase, and he had participated in a TPP extended by Chase under the HAMP. He made timely and sufficient trial payments required by the TPP. The property securing his loan had not been foreclosed.[16] He received an eligibility decision denying the loan for permanent modification during or after his trial period. In fact, before receiving the class action notice, Topchian received four notices denying the loan for permanent modification.[17] And he was not a debtor in bankruptcy proceedings.[18]
Topchian claims that because he already had a loan modification from Chase, he interpreted the four notices from Chase expressly denying him a permanent modification to be breaches of the existing modification. Thus, he claims that the class action notice, which informed him that he was a member of the class if he received an eligibility decision denying the loan for modification, was not adequate to put him on notice that he was a member of the class. Whether the four notices from Chase are characterized as denials of a permanent modification (as they expressly stated) or as breaches of an existing modification (as Topchian interpreted them), we find that Topchian should have realized that he met the Settlement Class criteria. Despite the plain language of the Class Notice and the undisputed facts in this case, Topchian neither opted out of the settlement nor objected to the Class Notice or the Settlement Agreement as part of the proceedings in the class action court. The fact that Topchian now claims the Class Notice was "muddled" does not create a genuine dispute of material fact negating the propriety of summary judgment. Summary judgment will be upheld "if the facts alleged to be in dispute are actually the differing opinions of the parties concerning the legal effect of documents or actions determining their respective rights." Baker , 806 S.W.2d at 743. Topchian may have subjectively believed that the Class Notice did not apply to him, but the undisputed material facts show that Topchian was a member of the Settlement Class as described in the Notice and he did not opt out of the class or otherwise object to the Settlement Agreement.
Topchian relies primarily on Twigg v. Sears , 153 F.3d 1222 (11th Cir. 1998), to argue that the Class Notice was inadequate. In that case, the court certified a class of Sears customers, some of who were overcharged for repair work actually *896 done by Sears and others who were charged for services never actually performed. Id. at 1224. On appeal, the Eleventh Circuit found that the notice, which described the class as customers who experienced "unnecessary and/or improper repairs," did not adequately alert customers having services never actually performed that they were part of the class. Id. at 1228. The notice in Twigg was directed to "[a]ll persons or entities who, during the period from June 10, 1988 to September 2, 1992, inclusive, purchased automotive repair services (including parts and/or labor) from any Sears, Roebuck & Co. Auto Center." Id. The court concluded that the meaning of the term "automotive repair services" and the question of whether that term encompassed certain issues were "susceptible to debate." Id.
In contrast, the Class Notice used precise language in defining the class, and the definition clearly included Topchian. The Class Notice plainly stated that Topchian was a class member if, among other criteria, he had "either (a) not received a permanent loan modification eligibility decision since the date of your initial trial period described in your [TPP], or (b) you did receive an eligibility decision denying the loan for permanent modification during or after your trial period described in your [TPP]." (Emphasis added.) While the parties dispute whether Topchian met part (a) of this criterion, there is no dispute that he met part (b). The record clearly shows that he received four separate written eligibility denials. Finding that, unlike the notice in Twigg , the Class Notice did not include objectively ambiguous language, we do not find Twigg instructive.[19]
As a Class Member and the plaintiff in the present case, Topchian satisfied the identity of parties element of res judicata. Topchian's Point I is denied.
B. Collateral Challenges to the Class Action Judgment based on Alleged Violations of Due Process
Even though the three elements for application of res judicata are satisfied here, Topchian objects to the res judicata effect of the class action judgment on three additional grounds: (1) inadequate representation by counsel for the class, (2) inadequate representation by named class plaintiffs, and (3) fraud.
Courts recognize the right of collateral attack on foreign judgments in certain circumstances. Generally, courts allow collateral attacks based on lack of subject matter jurisdiction,[20] failure to give due *897 notice,[21] and fraud in the procurement or concoction of the judgment. Slavens v. Slavens , 379 S.W.3d 900, 905 (Mo. App. W.D. 2012) (quoting Prom Motor Hotel, Inc. v. Motel Training Co. of Am. , 686 S.W.2d 896, 897 (Mo. App. W.D. 1985) ). In the class action context, "[a]bsent class members can collaterally challenge the res judicata effect of a prior class judgment either because they were not adequately represented ... or because there was not adequate notice." Juris , 685 F.3d at 1313 (internal citations omitted); see also Hege v. Aegon USA, LLC , 780 F.Supp.2d 416, 429 (D. S.C. 2011) (allowing collateral due process review of a prior class action judgment and concluding that both class notice and representation were constitutionally insufficient); Hesse v. Sprint Corp. , 598 F.3d 581, 587-88 (9th Cir. 2010) (allowing limited collateral review of the adequacy of representation where the class action court did not make sufficient findings on the issue).[22]
Topchian argues that the circuit court erred in granting summary judgment because he was not adequately represented by class counsel (Point II) or the class representatives (Point III). In support of these arguments, Topchian asserts that both class counsel and class representatives "sold out" the absent class members insofar as the class action judgment awarded class counsel $9.5 million in attorneys' fees and $3,500 in compensation to each class representative, while the absent class members received nothing of value.[23] Topchian also points out that the Settlement Agreement included a "clear sailing" provision.[24] These are the only facts Topchian presents in support of his *898 argument that class counsel and class representatives provided inadequate representation in violation of his due process rights.
We find Topchian's arguments regarding the adequacy of representation by class counsel and class representatives to be merely a pretext for challenging the fairness of the class settlement approved by the class action court. That court approved the settlement as "in all respects, fair, just, reasonable, and adequate to the Settlement Class Members." With respect to the $9.5 million in attorneys' fees and the $3,500 in compensation to each class representative, the class action court determined that those amounts were appropriate for several reasons, including: (1) the Settlement Agreement provided substantial benefits for the class; (2) the award of attorneys' fees and expenses was within the range of reasonable fees for similar class action settlements; (3) the fees were substantially below the total lodestar fees of class counsel; and (4) the fees were in addition to, and would not diminish, any class settlement.
In support of his argument that class counsel was inadequate, Topchian cites Hege , 780 F.Supp.2d at 432-35, wherein the court determined that a prior state court order in a class action was not entitled to preclusive effect because the class counsel did not provide adequate legal representation for the entire class. The evidence on which the Hege court concluded that class counsel was inadequate included: (1) the amount of the fees collected by class counsel ($3.5 million); (2) the existence of a "clear sailing" provision in the settlement agreement, which was agreed upon by the parties before the class action was even filed; (3) the fact that, with the clear sailing provision in place, class counsel began opposing all dissention to the settlement; (4) evidence that class counsel failed to engage the defendant in any adversarial manner; and (5) evidence of "outright hostility" to class members where class counsel actively opposed full recovery for class members. Id.
While Topchian is correct that the court in Hege considered the amount of the attorneys' fees and the existence of a clear sailing provision to be relevant to the adequacy of counsel inquiry, the Hege court did not hold that those two factors, alone, would be sufficient to sustain a due process challenge based on inadequate legal representation. Instead, as in Hege , there must be evidence of something outside of the class action court's approved settlement terms, and there is no such evidence in the present case. In fact, the class action court specifically found that the litigation was "intensely contested" through completion of the Settlement Agreement, which was "negotiated at arm's-length and without collusion." Moreover, the class action court was the proper forum to object to the Settlement Agreement on these grounds, and Topchian had notice and opportunity to object but failed to do so. We are bound by the substantive findings of the class action court regarding the fairness of the Settlement Agreement. Points II and III are denied.
In Point IV of his appeal, Topchian claims that the circuit court erred in granting summary judgment because there was evidence the Settlement Agreement was the product of fraud. But the issue before this court is whether the circuit court erred in giving preclusive effect to the class action judgment. Thus, the question is whether there was fraud in procurement of the judgment and not the Settlement Agreement. Topchian claims that *899 several aspects of the Settlement Agreement were fraudulent, including the facts that class counsel was paid $9.5 million in fees, absent class members received no economic benefit from the settlement, the threshold for the number of class opt-outs that would lead to the voiding of the settlement was confidential, and there was an agreement that class counsel would not say anything negative about Chase. To the extent that these terms were approved by the class action court as a part of its review and approval of the fairness of the settlement, we are bound by that court's substantive findings. The class action court found that the Settlement "Agreement is the product of good faith, arm's-length negotiations by Parties, with the substantial involvement of an independent, nationally respected mediator, and that each Party was represented by experienced counsel." The class action court also found that the Settlement Agreement "is, in all respects, fair, just, reasonable, and adequate to the Settlement Class Members." We are bound by the class action court's substantive findings as to fairness of the settlement.
The remainder of Topchian's claims in Point IV involve alleged fraud regarding the notice he received of the class action. Topchian claims class counsel committed fraud when they sent the "misleading" Class Notice to him. As discussed, supra , in response to Topchian's Point I, we find the Class Notice to be adequate and, thus, there is no basis for Topchian's claim that he was defrauded by receiving the notice.
Next, Topchian argues that Chase committed fraud by having the settlement administrator send the Class Notice directly to him even though he was represented at the time by legal counsel in a separate lawsuit against Chase. The Class Notice instructed Topchian, "If you have your own attorney, you may wish to have him or her review this Notice to get advice about how to proceed. This is particularly true if you have litigation pending on any subject including mortgage modification and/or foreclosure against Chase. " (Emphasis added.) The Notice also stated, "You have a right to consult with your own attorney, at your own expense, before deciding how best to proceed." Finally, the Notice instructed class members how to preserve existing claims against Chase. Specifically, the Notice stated, "If you want to keep the right to sue or continue to sue Chase, on you own, about Chase's handling and consideration of your request for a loan modification, you must...." We find no fraud in the delivery of the Class Notice directly to Topchian and no basis to believe that Topchian's due process rights were violated by the delivery of the notice. Point IV is denied.
Claims Against MLLF and SPS
Topchian alleges that MLLF and SPS violated the MMPA by engaging in unfair, deceptive, and misleading practices in connection with the attempted foreclosure on his property. Specifically, Topchian claims that MLLF violated the MMPA by collecting on a debt it knew or should have known was invalid because Chase mishandled the TPP, seeking payment on a debt it knew or should have known was invalid because of the TPP, failing to investigate the legitimacy of the debt before attempting to collect it, and ignoring Topchian's repeated statements that he was not in default. With respect to SPS, Topchian asserts that SPS, as the sub-servicer of Topchian's loan, sent him letters incorrectly stating he was in default, requested payment amounts that were not due, and demanded payment different from the *900 terms of his modification agreement. The circuit court granted summary judgment to MLLF and SPS on the ground that Topchian's MMPA claims against them were released by the class action judgment. In Point V of his appeal, Topchian argues that the circuit court erred in granting summary judgment to MLLF and SPS because the class action judgment did not release his current claims. Finding that these claims also are barred by res judicata, we affirm the circuit court's grant of summary judgment to MLLF and SPS on that basis and do not reach the alternative defense of release.[25]
Despite the fact that MLLF and SPS were not involved in the class action, they contend that Topchian's MMPA claims against them are barred by res judicata because his claims arise out of the same transaction or series of transactions that formed the basis of the class action and MLLF and SPS were in privity with Chase by virtue of their agency relationship with Chase. As we discussed earlier in connection with Chase, the First Circuit employs a transactional approach in determining whether causes of action are identical for purposes of res judicata. The claims are identical if they both "derive from a common nucleus of operative facts." Dolan , 2015 WL 4776786, at *12 (quoting Breneman , 381 F.3d at 38 ). Topchian alleges MLLF violated the MMPA by collecting on a debt it knew or should have known was invalid, failing to investigate the legitimacy of the debt, and ignoring Topchian's assertions that he was not in default. Similarly, Topchian alleges SPS, as the sub-servicer of his loan, violated the MMPA by sending him letters that incorrectly stated his loan was in default and requested payment amounts that were inconsistent with the terms of his modification agreement. These allegations of wrongdoing flow directly from Topchian's claim that he and Chase entered into a modification agreement that Chase subsequently refused to honor. Thus, his claims against MLLF and SPS derive from a common nucleus of operative facts-Chase's mishandling of Topchian's loan modification-and seek redress for the same basic wrong-failure to honor his loan modification by seeking payment that differed from the terms of the modification and commencing foreclosure. Therefore, the claims settled in the class action are sufficiently similar to the claims Topchian is pursuing here, and that prong of the res judicata defense is satisfied with respect to his claims against MLLF and SPS.
Turning to the final prong of res judicata-identity of parties-we find that the parties in the class action and here are identical because both MLLF and SPS were in privity with Chase. Res judicata applies if there is privity between a defendant in the earlier action and a defendant in the later action. Silva v. City of New Bedford , 660 F.3d 76, 80 (1st Cir. 2011). "Where one party acts for or stands in the *901 place of another in relation to a particular subject matter, those parties are in privity" for purposes of res judicata. Kogut v. Mortg. Elec. Reg. Sys., Inc. , No. 13-11825-RGS, 2014 WL 61345, at *2 (D. Mass. January 7, 2014) (quoting RG Fin. Corp. v. Vergara-Nunez , 446 F.3d 178, 187 (1st Cir. 2006) ).[26]
Courts have addressed privity with respect to defendants who, like MLLF, were agents and attorneys and, like SPS, were mortgage servicers. In Kimball v. Orlans & Associates , 651 Fed. Appx. 477, 481 (6th Cir. 2016), the Court of Appeals for the Sixth Circuit barred the plaintiffs' claims against Orlans & Associates, a law firm that served as Chase's agent and attorney in connection with foreclosures. The Sixth Circuit held that "[t]he Attorney Defendants are also in privity with Chase concerning mortgage foreclosure by virtue of their position as foreclosure counsel." Id. Similarly, in finding that a mortgage servicer acts as the agent of the mortgagee to effect collection of mortgage payments, the First Circuit noted that "it will be a rare case in which those two parties are not perfectly identical with respect to successive suits arising out of a single mortgage transaction." RG Fin. Corp. , 446 F.3d at 187. This is not one of those rare cases.
Here, the undisputed material facts show that MLLF was acting as attorney for Chase and was Chase's appointed successor trustee to foreclose on Topchian's property. The undisputed material facts also show that SPS became the sub-servicer of Topchian's loan under a 2013 Limited Power of Attorney. Topchian has not alleged that either MLLF or SPS acted in any other capacity in their dealings with him. Therefore, both MLLF and SPS were in privity with Chase and are identical to Chase for purposes of res judicata. Point V also is denied with respect to MLLF and SPS.
Conclusion
Summary judgment is appropriate here because there is no genuine dispute as to any material fact and Chase, MLLF, and SPS are entitled to judgment as matter of law on the affirmative defense of res judicata. Accordingly, we affirm.
Cynthia L. Martin, Presiding Judge, and James Edward Welsh, Judge, concur.

"When considering an appeal from summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was entered." St. Anthony's Med. Ctr. v. H.S.H. , 974 S.W.2d 606, 609 (Mo. App. E.D. 1998).

Topchian alleges that he and Chase entered into a permanent mortgage modification agreement based on the following: (1) he signed and returned the Home Affordable Modification Agreement to Chase within the time period provided; (2) he complied with the modification agreement by paying the agreed amount for March through December 2010, and those payments were accepted by Chase; and (3) Chase employees assured him over the telephone that he had a permanent modification even though he never received a copy signed by Chase. Chase disputes Topchian's assertion that he had a permanent mortgage modification agreement. For the reasons we discuss below, we agree with the circuit court that the disputed fact of whether Topchian obtained a permanent mortgage modification is not material. Therefore, the existence of this disputed fact does not negate the propriety of summary judgment.

Topchian claims that MLLF acted as a debt collector and "servicer" in the transaction with Chase, and, in support of his MMPA claim against MLLF, he lists "duties" MLLF was to perform as an alleged "debt collector." Topchian does not cite any authority for his interpretation of MLLF's legal status or duties, and his interpretation conflicts with both the engagement letter between Chase and MLLF and correspondence from MLLF to Topchian.

Donna Follmer, a plaintiff in one of the three underlying complaints involving alleged final loan modification agreements, is identified as a Class Representative in the Settlement Agreement. Like Topchian, Follmer alleged that she had a loan modification agreement with Chase, Chase breached that agreement after accepting several payments from Follmer under the agreement, and Chase subsequently attempted to foreclose on her property. The plaintiffs in the other two underlying complaints involving modification agreements did not become members of the Settlement Class.

The Eighth Circuit found that Topchian either stated a claim because the requirement that Chase sign and return the agreement was a condition precedent that Chase waived by either the oral representations of its agent or accepting payment, or, alternatively, even if the requirement that Chase sign was not a condition precedent, but a limitation on the mode of acceptance, Chase could orally waive that condition. Topchian v. JPMorgan Chase Bank, N.A. , 760 F.3d 843, 851-52 (8th Cir. 2014). In reviewing the lower court's grant of Chase's motion to dismiss, the Eighth Circuit was required to view all facts in the light most favorable to Topchian, and, in doing so, the court concluded that he had alleged sufficient facts to survive the motion to dismiss.

The Settlement Agreement included the same criteria for class membership.

The Settlement Agreement described in detail the types of claims and parties that would be released. We do not include the full release provisions here because they are irrelevant to our resolution of this case.

The Eighth Circuit issued its opinion in Topchian on July 28, 2014, more than four months after the close of the opt-out period. Therefore, Topchian could not have relied on the Eighth Circuit's opinion when deciding whether to respond to the Class Notice. When he had to make that determination, there was no court decision indicating that he may have had a permanent modification.

All rule references are to the Missouri Supreme Court Rules (2017), unless otherwise noted.

If the issuing court was acting pursuant to federal diversity jurisdiction, federal law sometimes requires applying the res judicata law of the state in which the issuing court was sitting. Semtek Int'l Inc. v. Lockheed Martin Corp. , 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). That does not impact our analysis in this case, however, because Massachusetts and First Circuit res judicata principles are the same. Dolan v. Chase Home Fin., LLC , No. 12-11662-GAO, 2015 WL 4776786 at *11 (D. Mass. July 10, 2015).

Moreover, we note the U.S. Supreme Court's statement in Semtek Int'l Inc. v. Lockheed Martin Corp. , 531 U.S. 497, 506-07, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), that the Full Faith and Credit Clause and the full faith and credit statute "[b]y their terms ... govern the effects to be given only to state-court judgments.... [N]o other federal textual provision, neither of the Constitution nor of any statute, addresses the claim-preclusive effect of a judgment in a federal diversity action." Id.

In Dolan , which involved a challenge to the same class action judgment at issue in this case, the United States District Court for the District of Massachusetts found that the prior class action judgment precluded plaintiffs' claims that were based on the same nucleus of operative facts as the claims being asserted by Topchian here.

Topchian cites Whole Woman's Health v. Hellerstedt , ---U.S. ----, 136 S.Ct. 2292, 2305, 195 L.Ed.2d 665 (2016), for the proposition that even an identical claim is not precluded if later evidence emerges that would support it. Hellerstedt held that petitioners' post-enforcement as-applied challenge to aspects of Texas laws regulating abortion providers was not the same claim as their pre-enforcement facial challenge. Id. The Supreme Court's holding in that case has no bearing on the present case where Topchian points to no development of new material facts, and his claims in this case are not predicated on events that postdate the class action judgment.

Typically, when there is an issue of identity of parties, it arises because the plaintiff in the later action was not a party to the earlier lawsuit but, instead, was so closely connected to a party in the earlier action that the plaintiff becomes bound by the earlier judgment, e.g. , the plaintiff in the later action may have been in privity with, or a successor in interest to, a plaintiff in the earlier action. The issue of identity of parties typically does not arise, as in this case, where the plaintiff in the later action was, in fact, a party in the previous action.

We address Topchian's due-process-based collateral attack on the adequacy of representation by class counsel and class representatives in the next section.

Although the property securing Topchian's loan was the subject of two foreclosure notices, it is undisputed that no foreclosure sale occurred.

Topchian received the Class Notice in January 2014. The four notices he received denying his loan for permanent modification were dated June 8, 2010, February 9, 2011, August 19, 2011, and August 22, 2011.

Topchian admits that his loan was serviced by Chase, he made payments, and he is not in bankruptcy. He contends that he was not a class member because his property was foreclosed (an argument we dismiss, supra ) and because he already had a permanent loan modification.

Topchian also cites Hege v. Aegon USA, LLC , 780 F.Supp.2d 416 (D. S.C. 2011), to support his argument that the Class Notice was deficient. In Hege , the class notice at issue contained a material misstatement of the governing law, leading members to believe that they would be better off in the class than they would be if they opted out. Id. at 430-31. The Class Notice in the present case did not contain a misstatement of applicable law, nor did it misinform class members about their options. Therefore, we find Hege distinguishable.

In his Reply Brief on appeal, Topchian raises subject matter jurisdiction, claiming that a recent U.S. Supreme Court decision establishes that the Massachusetts court could not have had subject matter jurisdiction. In Bristol-Myers Squibb Co. v. Superior Court of California , the Supreme Court held that a state court did not have specific jurisdiction over non-resident plaintiffs' tort claims for injuries not suffered in the state because federal constitutional due process limits jurisdiction to states where there is a substantial connection to the forum. --- U.S. ----, 137 S.Ct. 1773, 1781, 198 L.Ed.2d 395 (2017). Bristol-Myers Squibb did not involve a class action brought in federal court, and the Court expressly stated that "we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1784. Therefore, that case is not relevant to the jurisdictional analysis in this case. In fact, in explaining why he thinks Bristol-Myers is relevant here, Topchian asks this court to imagine that he had brought an individual claim against Chase in Massachusetts. His argument ignores the fact that the case given preclusive effect here was a class action, not an individual claim in a court that might not, under those circumstances, have had jurisdiction.

We addressed the issue of due notice in the context of our earlier discussion about the identity of parties prong of res judicata.

In note 16 of its opinion in Juris , the Eleventh Circuit describes a split of authority with respect to the scope or depth of collateral review. Juris , 685 F.3d at 1314, n.16. "Some courts hold that collateral review is limited, and absent class members are not permitted to relitigate-in a collateral attack-due process arguments that were raised by class objectors and rejected by the certification court." Id. "On the other hand, other authorities favor a more probing, broader, merits-based collateral review." Id. We need not decide the proper scope of collateral review available to Topchian in this case because, even assuming that the circuit court could have revisited the underlying merits of each of Topchian's arguments, we would affirm the circuit court's holding that Topchian failed to demonstrate a violation of his due process rights.

In addition to allowing class members to reapply for a loan modification and to access free debt and credit management counseling, Chase also agreed to waive certain fees for class members who reapply for modifications, stay foreclosure proceedings while the new applications are pending, and waive certain previously assessed fees for those applicants who receive modifications. The class action court concluded that the Settlement Agreement afforded substantial benefits to class members.

A clear sailing provision is an agreement by which the party who will pay attorneys' fees agrees not to object to the fee award as long as it does not exceed a specified maximum amount. Hege , 780 F.Supp.2d at 433.

The Respondents' affirmative defense of release is complicated by choice-of-law issues. In granting MLLF's and SPS's motions for summary judgment based on the affirmative defense of release, the circuit court relied exclusively on the language of the Settlement Agreement. The circuit court did not cite any case law to support its conclusion, so we do not know which law the court applied. Without expressly addressing the question of which law applies, Topchian relies on a First Circuit opinion on release, while Respondents cite Missouri case law. According to the Settlement Agreement itself, which is the source of the court-approved release of claims provisions, it is governed by California law. We need not resolve the issue of which forum's law applies because we find that Topchian's claims against MLLF and SPS are barred by res judicata.

In RG Financial Corporation v. Vergara-Nunez , 446 F.3d 178, 187 (1st Cir. 2006), the First Circuit applied Massachusetts law, but as we noted earlier, Massachusetts and First Circuit res judicata principles are the same.